The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 9, 2023

## 2023COA107

**No. 22CA0887, *Gebert v Sears Roebuck & Co.* — Torts — Personal Injury — Negligence — Vicarious Liability; Damages — Limitations on Damages for Noneconomic Loss or Injury; Constitutional Law — Seventh Amendment — Right to Civil Jury Trial**

In this personal injury action, the plaintiff cross-appeals the district court's reduction of her noneconomic damages to the statutory cap imposed by section 13-21-102.5(3)(a), C.R.S. 2023, arguing that it violates the Seventh Amendment to the United States Constitution. While published Colorado cases have rejected other constitutional challenges to statutory damage caps, a division of the court of appeals concludes as a matter of first impression that our general statutory cap on noneconomic damages does not run afoul of the Seventh Amendment because longstanding precedent instructs that the amendment does not apply to the

states.  The division also holds that the district court's admission of the defendant's earlier denial and later admission of negligence was irrelevant but ultimately harmless, and therefore it affirms.

COLORADO COURT OF APPEALS      **2023COA107**

Court of Appeals No. 22CA0887
Arapahoe County District Court No. 19CV32833
Honorable Elizabeth Beebe Volz, Judge

Jacqueline Gebert,

Plaintiff-Appellee and Cross-Appellant,

v.

Sears, Roebuck & Co.,

Defendant-Appellant and Cross-Appellee.

## JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Furman and Pawar, JJ., concur

Announced November 9, 2023

Ridley, McGreevy & Winocur, P.C., Robert T. Fishman, Denver, Colorado; Burg Simpson Eldredge Hersh & Jardine, P.C., Stephen J. Burg, Jessica L. Breuer, David J. Crough, Englewood, Colorado, for Plaintiff-Appellee and Cross-Appellant

Wheeler Trigg O'Donnell LLP, Meghan Frei Berglind, Frederick R. Yarger, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

Lewis Roca Rothgerber Christie LLP, Kendra N. Beckwith, Lance T. Collins, Denver, Colorado, for Amici Curiae Colorado Defense Lawyers Association, Colorado Civil Justice League, and Coloradans Protecting Patient Access

Lewis Roca Rothgerber Christie LLP, Kendra N. Beckwith, Lance T. Collins, Denver, Colorado, for Amici Curiae American Property Casualty Insurance Association, American Tort Reform Association, Chamber of Commerce of the United States of America, Colorado Chamber of Commerce, Colorado Civil

Justice League, Coloradans Protecting Patient Access, National Association of Mutual Insurance Companies

Dormer Harpring, Timothy M. Garvey, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

¶ 1    In this personal injury action, plaintiff, Jacqueline Gebert, sued defendant, Sears, Roebuck & Co. (Sears), and its local home repair branch after being electrocuted by her stove, which a Sears repairperson had incorrectly wired.  A jury awarded Gebert $2,700,000 in damages.  Sears appeals the district court's admission of evidence regarding its initial denial and later admission of negligence.  Gebert cross-appeals the district court's reduction of her noneconomic damages to the statutory cap in section 13-21-102.5(3)(a), C.R.S. 2023.  Nonparties to the litigation filed three amicus briefs — one in support of Sears on the evidentiary issue and two taking opposing stances on the constitutionality of Colorado's statutory cap on noneconomic damages.

¶ 2    As to the evidentiary issue, we conclude that the district court erred by admitting evidence of Sears' denial and later admission of negligence because it was not relevant to any material issue at trial.  Nevertheless, any error in the admission of the evidence was harmless.

¶ 3    Although binding precedent has upheld the constitutionality of Colorado's statutory cap on noneconomic damages, we consider, as

a matter of first impression, whether the statutory cap infringes on the right to a civil jury trial as guaranteed by the Seventh Amendment to the United States Constitution. Because the Seventh Amendment has not been applied to the states, and because our state constitution does not guarantee the right to a civil jury trial, we conclude that the statutory damages cap is constitutional. Perceiving no abuse of the district court's discretion in declining to exceed the cap, we conclude that the court properly capped Gebert's noneconomic damages at the statutory limit. Therefore, we affirm.

## I.    Background

### A.    Factual History

¶4      In January 2019, Gebert hired Sears to repair a faulty burner on her electric stove. Sears dispatched a service technician to Gebert's home who incorrectly wired the stove. The miswiring caused the metal parts of the cooking surface to become energized at the same voltage as a standard home outlet.

¶5      After the repair, Gebert placed a pan on the stove while simultaneously washing dishes. With wet silverware in one hand, Gebert used the other hand to pull the pan off the hot burner and

was electrocuted.  Gebert testified that she felt the current enter her body, causing her arm to jerk and release the silverware to the floor.

¶ 6     Gebert was taken to the emergency room, where she reported experiencing leg pain and fatigue.  A doctor examined Gebert, ran several tests, and concluded that any electrical shock she had received did not injure her muscles, heart, or internal organs.

¶ 7     Gebert visited a primary care physician the next day, complaining of a tingling sensation in her fingers.  In the months after her electrocution, Gebert received medical care from various specialists for symptoms ranging from abnormal sensations in her body, visual disturbances, and ringing ears, to anxiety and cognitive and memory deficits.

## B.     Procedural History

¶ 8     Gebert sued Sears for negligence and vicarious liability.  In its answer, Sears denied that it was negligent in hiring, supervising, or training its repairperson.  Regarding the vicarious liability claim, Sears admitted that the repairperson was a Sears employee acting within the course and scope of his employment but denied that he was negligent.  At the conclusion of its answer, Sears requested

costs, attorney fees, and interest without asserting a legal basis for the request.

¶ 9     In response to Gebert's request for admissions (RFA), Sears again denied that its employee incorrectly wired the stove.  The repairperson later denied during his deposition accessing the stove's electrical box or rewiring any portion of the stove.

¶ 10    Six weeks before trial, Sears amended its RFA response.  Sears admitted that the repairperson's incorrect wiring energized the stove.  But Sears continued to deny that the incorrect wiring caused any injury to Gebert.  Gebert moved for sanctions under C.R.C.P. 37(c)(2) based on Sears' delayed admission of negligence.  The court did not rule on the motion until after trial.

¶ 11    The parties agreed that the only remaining issues for trial were causation and damages.  Accordingly, the jury received stipulated facts from the parties, including that the repairperson incorrectly wired the stove, which energized the cooking surface.  Gebert sought damages for noneconomic losses and for physical impairment.

¶ 12    At trial, the jury heard testimony from Gebert's neurologist, neuropsychologist, physical therapist, and optometrist,[1] who each testified about their role in Gebert's treatment. After eliminating other potential diagnoses, Gebert's neurologist diagnosed her with a mild traumatic brain injury (TBI) caused by electric shock. On cross-examination, Sears impeached the neurologist with his own statement that, despite "best efforts and extensive testing, there has been a general paucity of objective findings" to corroborate the diagnosis. Gebert's neuropsychologist diagnosed her with post-traumatic stress disorder and a mild neurocognitive disorder resulting from TBI. Gebert's physical therapist testified that she initially treated Gebert for balance problems, but that Gebert's treatment plan evolved to include treatment for neck, shoulder, and hip pain, as well as sensitivity to touch, light, and sound. Gebert was ultimately diagnosed with a hypersensitive sympathetic nervous system. The optometrist's testimony established that Gebert had visual impairment in her left eye that significantly improved after seven months of treatment.

---

[1] A video deposition of Gebert's optometrist was played for the jury.

¶ 13    After a five-day trial, the jury found that Gebert was injured because of Sears' negligence.  The jury returned a $2,000,000 verdict for Gebert's noneconomic damages and a $700,000 verdict for physical impairment.

¶ 14    Sears moved the district court to reduce Gebert's noneconomic damages to the then-applicable statutory limit ($468,010).  § 13-21-102.5(3)(a).  The district court granted the motion and reduced Gebert's noneconomic damages to the statutory cap.  The court also denied Sears' motion for a new trial or remittitur and Gebert's motion for sanctions based on Sears' delayed admission of negligence.

¶ 15    We first address Sears' challenge to the district court's ruling allowing evidence of Sears' denial and later admission of negligence.  Then we address Gebert's argument that the court erred by capping her noneconomic damages at the statutory limit.

## II.    Admission of RFA Evidence

¶ 16    Sears challenges the district court's admission of evidence that Sears initially denied negligence in response to the first RFA but later amended its RFA response to admit negligence.  Sears claims that its denial and later admission were irrelevant to the issues

6

remaining at trial: causation and damages.  We agree but conclude that any error was harmless.

## A.    Additional Background

¶ 17    Before jury selection, Sears' counsel made a motion in limine questioning Gebert's subpoena of Bryan Kerns, a Sears representative.  Sears argued that, given its stipulation to liability, Kerns' testimony was irrelevant to any remaining issue at trial.  Gebert responded with two purposes for calling Kerns: (1) to "review" Sears' credibility as to the inconsistent factual positions it had taken and (2) to discuss "the dangers of electric injury."

¶ 18    Regarding the first purpose, the district court replied,

> I've seen this many times where a defendant in a personal injury accident or incident denies that they were negligent and then as the case proceeds they admit that they are negligent and counsel wants the jury to hear that at one point in time they denied it, and now they've admitted it.  I don't know — personally, I don't know that that's all that important to anybody, including the jury, but it's your case.  So, if you want to tell the jury that [Sears] denied that they were negligent, but now has admitted it . . . you can make that argument if you want to.

After briefly discussing Kerns' ability to testify remotely, the court continued:

[A]nd we'll deal with relevance issues while he's on the stand. So, what I caution you, [plaintiff's counsel], is that . . . I will allow you to ask a question or two about . . . "when did Sears Roebuck admit negligence?" But we're not going to spend a lot of time on it. And we're not going to go into every single incident where [Sears], at some point in this case, denied that [it was] . . . negligent. So, focus on other issues that you raised about if he gave testimony about the knowledge of electricity or stoves or whatever it is. Because we're not going to go into that collateral issue . . . .

¶ 19 Gebert's counsel called Kerns to testify about Sears' denial and later admission of negligence. Kerns testified that Sears denied negligence and sought costs, attorney fees, and interest in its January 2020 answer. Sears objected on relevance grounds. The district court overruled the objection, explaining, "Counsel, we've talked about [the fact that] you can talk about the timeline of . . . what position they took. . . . But not an argument to the jury, at this point in time." Gebert's counsel then asked Kerns whether Sears denied negligence in its first RFA response. Sears again objected on relevance grounds, and the court again overruled the objection, but it warned Gebert's counsel to elicit the timeline and move on.

¶ 20    Gebert's counsel then asked Kerns how Sears' position changed in its amended RFA response, to which Kerns answered that Sears admitted its employee's negligence. Gebert's counsel concluded the examination as follows:

> PLAINTIFF: Okay. And this is the first time, so first time —
>
> DEFENDANT: Objection, Your Honor. . . .
>
> THE COURT: He can — you can ask that question.
>
> PLAINTIFF: Yeah.
>
> THE COURT: Just . . . ask that question and let him answer and then let's move on to something else.
>
> PLAINTIFF: So the first time they admit responsibility is August [17], 2021?
>
> . . . .
>
> WITNESS: [T]hat's . . . the date that it says admit on the form. I haven't had conversations about this in months.
>
> PLAINTIFF: Now, sir, I did the math on that and it took Sears nine hundred —
>
> DEFENDANT: Objection.
>
> PLAINTIFF: — and thirty-eight days —
>
> THE COURT: All right.
>
> PLAINTIFF: — to admit —

9

THE COURT: Sustained.

PLAINTIFF: — negligence.

THE COURT: Sustained.  Sustained.
Sustained, Counsel.  Let's move on to —

PLAINTIFF: That was my last — that's my last
question, Your Honor.

¶ 21     On redirect, Gebert's counsel continued to push the

boundaries of the district court's original ruling to allow "a question

or two."  The court scolded counsel, "That is enough.  This is such a

collateral issue."  After again warning Gebert's counsel that "[t]his is

super collateral.  It's a stipulated fact in your jury instructions that

they admitted negligence," the district court allowed Gebert two

more minutes on the subject.

¶ 22     During closing argument, Gebert's counsel characterized

Kerns' testimony as follows:

> Now, you've heard that [Sears] was 100
> percent negligent.  But [Sears] hasn't really
> accepted responsibility.  I covered that with
> Mr. Kerns and you heard that they denied
> responsibility, despite having these
> inspections.  They said, "No, we didn't do it.
> Prove it."  And each step of the way, we've had
> to prove it.  That's something for you to
> consider.  After that inspection, literally with
> the Sears person holding it in the pictures,
> they said, "Nope, this was not" — "this was not

hotwired and we didn't do anything wrong. Prove it."

The second inspection, wrongly wired. Again, they denied any responsibility, even having these photos in their files. What's the reasonable basis for that?

You heard from Mr. Kerns that he said it's clearly improperly wired. . . . What they did is they denied responsibility and they asked Ms. Gebert to pay them money in this case.

So, just so everybody has a full, clear picture about what's happened here, she . . . has had an electric shock. She's trying to do the best she can. She's trying to figure things out. And Sears is saying, "You're going to pay us money." Consider that.

You know, sometimes people . . . do things to try to look good. Admission of liability, they knew it was indefensible. And they were hoping to come in here and say, "Look, we took responsibility." And they were hoping they would get rewarded from that — from all of you. You know . . . playing legal games, it shouldn't be like this. Nine hundred and thirty-eight days.

Sears' counsel did not object.

¶ 23    In its post-trial order denying Gebert's motion for sanctions, the court described Kerns' testimony, and how Gebert's counsel used it at closing argument, as "not necessary" and a "strategic trial tactic."

11

## B. Preservation

¶ 24 Sears claims that the RFA evidence was inadmissible for three independent reasons: (1) other jurisdictions have uniformly held that RFA evidence regarding litigation conduct is inadmissible in tort cases where the parties' litigation conduct is not at issue; (2) Sears has a right to mount a good faith legal defense, and the RFA evidence compromised that right; and (3) the evidence was irrelevant. Only Sears' third argument is preserved.

¶ 25 In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50; *Colo. Div. of Ins. v. Statewide Bonding, Inc.*, 2022 COA 67, ¶ 73. To properly preserve an argument for appeal, the party asserting the argument must present "the sum and substance of the argument" to the district court. *Madalena*, ¶ 50 (citation omitted).

¶ 26 Sears did not argue during the motions in limine conference that responses to RFAs are necessarily inadmissible. Nor did it argue that admission of the RFA evidence compromised Sears' right to mount a legal defense. Because Sears did not bring these arguments to the district court's attention and did not provide the

12

court with an opportunity to rule on them, they are not preserved, and we will not consider them. *See Dill v. Rembrandt Grp., Inc.*, 2020 COA 69, ¶ 24.

¶ 27  In contrast, the foregoing record evidence convinces us that Sears raised the sum and substance of its relevance objection to the district court repeatedly, and the court understood the objection and had multiple opportunities to rule on it. To the extent that the district court's first ruling was ambiguous because it said it would take up relevance issues on the stand, that ambiguity was remedied when Sears objected on relevance grounds to Gebert's first question about RFA evidence, and the court responded that it would allow brief questioning about the general timeline of the denial and later admission, pursuant to its earlier ruling. The relevance objection was, then, clearly and definitively preserved. Because Sears properly preserved that argument, we address it below, concluding that the evidence was irrelevant but that its admission was harmless.

C.  Applicable Law and Standard of Review

¶ 28  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of

13

the action more probable or less probable than it would be without the evidence." CRE 401. Evidence that is not relevant is inadmissible. CRE 402.

¶ 29 We review a district court's evidentiary rulings for an abuse of discretion. *CORE Elec. Coop. v. Freund Invs., LLC*, 2022 COA 63, ¶ 16. A district court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

¶ 30 In the civil context, we review evidentiary rulings for harmless error. CRE 103(a); C.R.C.P. 61. Thus, we will only disturb the district court's decision if an error affected a substantial right of a party. *CORE Elec. Coop.*, ¶ 41. An error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Id.* (quoting *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010)).

### D. The RFA Evidence Was Irrelevant

¶ 31 We conclude that the RFA evidence was not relevant to any material fact at trial. There is no dispute that causation and damages were the contested issues at trial; because Sears admitted

14

its negligence, that was not at issue at trial. Gebert did not advance an evidential theory as to how Sears' litigation conduct made any fact material to causation or damages more or less likely. *Alhilo v. Kliem*, 2016 COA 142, ¶ 24 (evidence of an undisputed issue tends to be irrelevant); *Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817-18 (Colo. App. 2006) (holding that, in cases involving bad faith of insurers, evidence of litigation conduct is admissible subject to CRE 403, but the relevance of litigation conduct not directly related to an insurance company's alleged bad faith "may be limited"); *Gonsalves v. Li*, 182 Cal. Rptr. 3d 383, 391 (Ct. App. 2015) (holding that RFA evidence is inadmissible where a party's litigation conduct is not directly at issue); *Bailes v. U.S. Fid. & Guar. Co.*, 512 So. 2d 633, 640 (La. Ct. App. 1987) ("[T]he purpose of a request for admissions is to eliminate the necessity of proving uncontroverted facts. Denials of the facts contained in such requests, however, have no independent probative value."). Even the district court admitted that the evidence was "collateral" and not for the jury.

¶ 32      Gebert's counsel told the district court that the evidence would be used to "review the credibility of Sears." "Credibility" means

15

"[t]he quality that makes something . . . worthy of belief." Black's Law Dictionary 463 (11th ed. 2019). Gebert did not explain how the RFA evidence was probative of the believability of a witness or evidence, and the district court did not make factual findings to that effect in its evidentiary ruling. We recognize that the credibility of a witness is always relevant, *Margerum v. People*, 2019 CO 100, ¶ 12, but disagree that the challenged evidence was used here to attack the believability of any witness. *See* Fed. R. Evid. 401 advisory committee's note to 1972 proposed rules ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.").

¶ 33 Indeed, Gebert's closing argument told a different story. Gebert did not use the evidence to point out that Kerns (Sears' representative), or any evidence that Sears presented, was not worthy of belief. To the contrary, Gebert used the evidence to portray Sears as disingenuous and uncompromising. Gebert argued that Sears played legal games, did not "accept responsibility," and had the audacity to ask her for fees and costs after injuring her. These arguments had nothing to do with

causation or damages, and they had nothing to do with the believability of any witness.[2]  Instead, these arguments were blatant attacks on Sears' character offered to inflame the hostility of the jury, which is plainly improper.  CRE 404(a); CRE 403.

¶ 34    We are similarly unpersuaded by Gebert's arguments on appeal.  Gebert argues that Sears' responses to the RFA were admissible either as statements by a party opponent under CRE 801(d)(2) or statements against interest under CRE 804(b)(3).  Both arguments miss the mark, as Gebert would still have to overcome the relevancy hurdle before the evidence could be admitted under those identified hearsay rules.  And even if the RFA evidence was relevant, CRE 804(b)(3) does not apply because a representative of Sears was available to testify.  CRE 804(b) ("The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . .").

---

[2] These arguments had some relevance to Gebert's motion for sanctions, but that motion required a decision by the court, not the jury.

E.      Admission of the RFA Evidence Was Harmless

¶ 35      We conclude that the RFA evidence did not, on its own, substantially influence the outcome of the case.  *See Bly*, 241 P.3d at 535; *see also Balzekas v. Looking Elk*, 627 N.E.2d 84, 89 (Ill. App. Ct. 1993) (holding that mention, during opening statement, of a delayed admission of liability, while irrelevant, did not warrant mistrial).  We reach this conclusion for four reasons.

¶ 36      First, Gebert presented significant evidence from four medical professionals who diagnosed her as having cognitive and physical impairments following her electrocution.  Importantly, at least three of these doctors testified to the objectiveness of their diagnostic testing, asserting that Gebert could not "fake" the results.  And Gebert presented testimony from several lay witnesses that she is not the same person she was before the incident.

¶ 37      Second, Sears had an opportunity to cross-examine Kerns, and it used the opportunity to give the jury a benign explanation for its change in litigation strategy.  Kerns testified that Sears' repairperson denied opening the stove's electric box and doing any rewiring in his deposition.  And Kerns testified that, after further

investigation and "multiple discussions," Sears concluded that its repairperson was likely the one who incorrectly wired the stove.

¶ 38    Third, while the RFA evidence was Gebert's counsel's first substantive point in closing argument, Sears' counsel did not object to the argument, suggesting counsel's belief that, in the context of live argument, the argument was not overly damaging. *See People in Interest of T.C.C.*, 2017 COA 138, ¶ 7.

¶ 39    Fourth, while Sears repeatedly characterizes the prejudicial harm of the irrelevant admission as causing the "oversized" verdict awarded, we cannot ignore the fact that the jury awarded less than the amount for which Gebert asked, *see Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009), and the district court capped that verdict at the statutory limit, reducing Sears' claimed damages. *See Scholle v. Ehrichs*, 2022 COA 87M, ¶ 68 (a court's instructional error in defining the categories of damages at issue is harmless where the jury did not award damages in the challenged category) (*cert. granted* Apr. 10, 2023).

¶ 40    For these reasons, we cannot conclude that the district court's admission of irrelevant evidence, and permitting its improper use in

closing argument, substantially influenced the outcome of the case. *See Bly*, 241 P.3d at 535; *Balzekas*, 627 N.E.2d at 89.

### III. Statutory Cap on Noneconomic Damages

¶ 41 Section 13-21-102.5(3)(a) governs limitations on damages for noneconomic loss or injury, and it states, in pertinent part,

> In any civil action . . . in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor.

The statutory damages cap is adjusted biennially for inflation. § 13-21-102.5(3)(c)(I).

¶ 42 On cross-appeal, Gebert argues that section 13-21-102.5(3)(a) is unconstitutional. Gebert contends that the statute violates the Seventh Amendment right to a trial by jury. In the alternative, Gebert argues that the district court abused its discretion by declining to exceed the presumptive statutory cap. Both arguments are unavailing.

### A. Constitutional Argument

¶ 43 The Seventh Amendment to the United States Constitution establishes the right to a jury trial in civil cases. It also provides

20

that in suits at common law, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Seventh Amendment does not apply to the states. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 432 (1996); *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916); *Firelock Inc. v. Dist. Ct.*, 776 P.2d 1090, 1096 (Colo. 1989).

¶ 44     Gebert asks us to apply the Seventh Amendment to the states via the incorporation doctrine. For support, Gebert argues that the right is deeply rooted in our nation's history and tradition and essential to our scheme of ordered liberty. *See McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010). We are not at liberty to do so. *State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *see also People v. Harmon,* 2019 COA 156, ¶ 3 n.1 ("[W]hen . . . the United States Supreme Court decides a question of federal constitutional law, that decision constitutes the supreme law of the land, and we must follow it . . . .").

¶ 45     Gebert argues that we may nevertheless incorporate the Seventh Amendment against the states if recent Supreme Court

21

precedent implicitly overrules its prior precedent.  But Gebert advances no authority that, in our view, implicitly overruled the longstanding rule that the Seventh Amendment does not apply to the states.  To the extent that *Walker v. Sauvinet*, 92 U.S. 90 (1875), rests on shaky legal footing, as Gebert suggests, we find the fact that the Supreme Court continues to cite *Walker* with approval for the proposition that the Seventh Amendment does not apply to the states fatal to Gebert's argument.  *See Gasperini*, 518 U.S. at 432.  Thus, we are not convinced that the Supreme Court has implicitly overruled *Walker* and its progeny or that we have discretion to deviate from it.  *See Firelock*, 776 P.2d at 1096.

¶ 46    And in any event, federal courts have upheld damage caps under the United States Constitution.  *See Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1046 (10th Cir. 2021) ("It is clearly established that the application of a statutory damages cap to a jury award does not violate the Reexamination Clause."); *Patton v. TIC United Corp.*, 77 F.3d 1235, 1247 (10th Cir. 1996) (upholding constitutionality of noneconomic damages cap statute under the Equal Protection Clause); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (recognizing that many procedural devices

that limit a civil jury's domain, including directed verdict, retrial, and summary judgment, are not inconsistent with the Seventh Amendment).

¶ 47     Unlike the United States Constitution, the Colorado Constitution does not guarantee the right to a jury trial in civil cases. *Johnson v. Schonlaw*, 2018 CO 73, ¶ 9; *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 906 (Colo. 1993). Gebert alternatively argues that we should overrule this precedent and recognize the civil jury trial right under the Colorado Constitution. We are, again, bound by the precedent Gebert challenges. *Silver v. Colo. Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo. App. 2009) (noting that a division of this court is not at liberty to disregard a rule announced in a prior supreme court case absent "some clear indication" that the supreme court has overruled its prior case); *Rocky Mountain Gun Owners v. Hickenlooper*, 2016 COA 45M, ¶ 21 ("There may be good reason for the supreme court to alter [its] precedent in the future, but we are not at liberty to do so.").

¶ 48     Thus, we rely upon the well-established appellate precedent that statutory caps on noneconomic damages are constitutional and decline Gebert's invitation to break new ground. *See Garhart v.*

*Columbia/Healthone, L.L.C.*, 95 P.3d 571, 582 (Colo. 2004) (upholding damages cap imposed by the Health Care Availability Act (HCAA)); *Scholz*, 851 P.2d at 907 (holding that the HCAA's damages cap does not violate the guarantees of equal protection or due process of law); *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210, 1215 (Colo. App. 2009) (upholding damages cap imposed by the Workers' Compensation Act); *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 95-96 (Colo. App. 1997) (upholding the general statutory cap on noneconomic damages against equal protection and due process challenges under the Colorado and Federal Constitutions as well as a right of access to the courts challenge under our state constitution).

## B.   Abuse of Discretion Argument

¶ 49    The relevant statutory cap after Gebert's trial, as adjusted for inflation, was $468,010.  *See* § 13-21-102.5(3)(c)(III).  The statute "permits, but does not require," the district court to exceed the cap if it finds a justification for doing so.  *Pisano v. Manning*, 2022 COA 22, ¶ 35.  Thus, "an award in excess of the statutory cap necessarily represents an exception to the standard limit."  *Id.* at ¶ 23.  We will reverse a district court's finding that no justification

24

existed to exceed the statutory cap only if it was manifestly arbitrary, unreasonable, or unfair. *Id.* at ¶ 37.

¶ 50 We perceive no such abuse of discretion. The district court found that Gebert's injuries were not "so severe or desperate as to warrant an increase" in the damages award above the cap. Specifically, the court relied on the fact that Gebert was able to continue working after the incident and continues to live a generally productive life notwithstanding her TBI. Testimony in the record — including that Gebert remained able to drive, achieved professional accomplishments after the incident, and saw improvement in her physical symptoms after the incident — supports the court's conclusion. *Id.* at ¶¶ 39-41.

¶ 51 The court also noted that the testimony regarding Gebert's various diagnoses was "contradictory." That conclusion finds support in the record, particularly in the testimony of Gebert's neurologist and neuropsychologist, who each testified to the lack of objective evidence that could explain all of Gebert's claimed symptoms.

¶ 52 We perceive no abuse of discretion in the district court's conclusion that Gebert's injuries did not rise to the severity of the

plaintiffs' injuries in cases where the trial court had properly entered a damages award in excess of a damages cap. *See Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 639 (Colo. App. 1998) (exceeding the statutory limit was warranted where stress exacerbated the plaintiff's multiple sclerosis and where she would eventually require a wheelchair); *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1362 (Colo. 1994) (exceeding the statutory limit was warranted where the plaintiff was injured in an explosion causing severe burns and dislocation of both shoulders). On these facts, we cannot conclude that the district court's failure to find a justification to exceed the statutory cap was manifestly arbitrary, unreasonable, or unfair. *Pisano*, ¶ 37.

¶ 53    We are unpersuaded by Gebert's suggestion that the jury's verdict was dispositive of the district court's obligation to exceed the statutory cap. *Id.* at ¶ 42 ("[T]he court does not abuse its discretion by requiring something more than the mere fact of a jury award to justify exceeding the statutory cap."). The argument misunderstands *Pisano*, where a division of this court unambiguously observed that it was "not aware of any case that stands for the proposition that a trial court must exceed the

statutory cap if it determines that the jury's noneconomic damages award was supported by clear and convincing evidence." *Id.* at ¶ 31. The court was unable to identify a justification, based on clear and convincing record evidence, to exceed the statutory cap. And Gebert does not advance such a justification on appeal. Thus, we perceive no error.

## IV. Disposition

¶ 54 The judgment is affirmed.

JUDGE FURMAN and JUDGE PAWAR concur.