24CA0260 People in Interest of SB 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0260 Jefferson County District Court No. 22JV30192 Honorable Ann Gail Meinster, Judge The People of the State of Colorado, Appellee, In the Interest of S.B., a Child, and Concerning J.B., Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE SULLIVAN Fox and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee Robert G. Tweedell, Guardian Ad Litem The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect proceeding, J.B. (father) appeals the judgment terminating his parent-child legal relationship with S.B. (the child). We affirm. I. Background ¶ 2 The Jefferson County Division of Children, Youth and Families (the Division) received a report that the then-six-year-old child was found with father, who was “passed out” in his car. Father was arrested after law enforcement found methamphetamine residue and fentanyl in the car, and a family friend picked up the child. When the caseworker met with father, he admitted that he’d been driving under the influence with the child in the car and that he used fentanyl and methamphetamine on a daily basis. ¶ 3 The Division filed a petition in dependency and neglect based on concerns regarding both parents’ substance abuse. The juvenile court ordered that the child be placed in the temporary legal custody of the Division, and the child remained in the family friend’s care. Approximately three months later, the child was placed with her maternal aunt. ¶ 4 The juvenile court adjudicated the child dependent and neglected. The court adopted a treatment plan that required father 
2 to abstain from using alcohol, marijuana, and all other drugs; engage in substance abuse treatment; communicate with the caseworker and other professionals; comply with his criminal matters; and meet the child’s developmental, physical, and emotional needs. The court also ordered that father be given four hours of supervised family time with the child every week. ¶ 5 The Division later moved to terminate father’s parental rights. Following a hearing, the juvenile court granted the motion. II. Discussion ¶ 6 Father’s sole contention on appeal is that the juvenile court erred by failing to provide him with a reasonable amount of time to comply with his treatment plan before terminating his parental rights. Father argues that he had made consistent, significant progress in substance abuse treatment and maintained a loving, bonded relationship with the child throughout the course of the proceeding. Thus, he argues that the court’s finding that he couldn’t become fit within a reasonable amount of time was unsupported by the record. We disagree. 
3 A. Standard of Review and Preservation ¶ 7 Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. We review the court’s factual findings for clear error, but we review de novo the court’s legal conclusions based on those facts. Id. ¶ 8 The credibility of the witnesses, as well as the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn from the evidence, are within the province of the juvenile court. People in Interest of A.J.L., 243 P.3d 244, 249–
50 (Colo. 2010). We don’t reweigh the evidence or substitute our judgment for that of the court. People in Interest of K.L.W., 2021 COA 56, ¶ 62. ¶ 9 The Division asserts that father failed to preserve the issue on appeal because, while he argued that it was in the child’s best interest to keep the case open for father to work on his treatment plan, he didn’t argue that the conduct or conditions that rendered him unfit were likely to change within a reasonable time. To properly preserve an argument for appeal, a party must present 
4 “the sum and substance of the argument” to the trial court. Gebert v. Sears, Roebuck & Co., 2023 COA 107, ¶ 25 (citation omitted). Here, however, we need not determine whether father’s arguments to the juvenile court were sufficient to preserve his claim because even if we assume that the claim was preserved, we discern no basis for reversal. B. Applicable Law ¶ 10 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent hasn’t complied with an appropriate, court-approved treatment plan or the plan hasn’t been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change in a reasonable time. § 19-3-
604(1)(c), C.R.S. 2023. ¶ 11 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. People in Interest of S.Z.S., 2022 COA 133, ¶ 23. “Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child’s physical, emotional, and mental health needs.” S.R.N.J-S., ¶ 9. A parent’s 
5 noncompliance with a treatment plan generally “demonstrates a lack of commitment to meeting the child’s needs and, therefore, may also be considered in determining unfitness.” People in Interest of D.P., 181 P.3d 403, 408 (Colo. App. 2008). ¶ 12 A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights. People in Interest of D.Y., 176 P.3d 874, 876 (Colo. App. 2007). Periods as short as five to nine months have been held to be sufficient to comply with a treatment plan.   People in Interest of A.J., 143 P.3d 1143, 1152 (Colo. App. 2006). ¶ 13 In determining whether a parent’s conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider several factors, including (1) whether any change occurred during the dependency and neglect proceeding; (2) the parent’s social history; and (3) the chronic or long-term nature of the parent’s conduct or condition. K.D. v. People, 139 P.3d 695, 700 (Colo. 2006). ¶ 14 The determination of a reasonable period is necessarily fact-
specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. D.Y., 176 P.3d at 
6 876. But a reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. S.Z.S., ¶ 24. C. Analysis ¶ 15 The juvenile court found that father had been given a reasonable amount of time to comply with his treatment plan, but the court wasn’t satisfied that father had sufficiently addressed the issues that triggered the Division’s involvement. The court stated that given father’s “lengthy history” with substance abuse problems, it would’ve wanted to see at least six months of documented sobriety before moving toward reunification. It found that father never reached that point. The court acknowledged that father “deserve[d] credit” for testing negative for fentanyl in the months leading up to the termination hearing. But the court also found that throughout the case, father missed urinalysis (UA) tests, never tested negative for all substances, and lacked engagement in treatment. Thus, the court found that father’s recent progress didn’t outweigh the lack of consistent progress and demonstrated sobriety throughout the rest of the case. And, crediting the family time supervisor’s testimony, the court found that father hadn’t 
7 sufficiently addressed the basic protective concerns that were present at the beginning of the case. The court concluded that the same problems outlined in father’s treatment plan still existed without adequate improvement and that the conduct or condition that rendered father unable to care for the child was unlikely to change in a reasonable time. ¶ 16 Additionally, the juvenile court determined that the expedited permanency planning (EPP) provisions didn’t apply but nevertheless found that it was “very close” and that “this child’s need for permanency [wasn’t] any less because she missed a close deadline.” The court noted that the case had been open for fifteen months and that the child was showing the “stress of the situation.” The court found that the child had been in out-of-home placement for the entirety of the case and needed the stability and permanency of an adoptive home. ¶ 17 The record supports these findings. ¶ 18 The Division had received reports concerning father’s substance use dating back to 2019. Approximately fifteen months had passed between the time the caseworker initially referred father to substance abuse treatment and the termination hearing. And 
8 about a year had passed between the adoption of father’s treatment plan and the hearing. But the record shows that by the time of termination, father hadn’t successfully resolved the concerns about his substance use. ¶ 19 The caseworker testified that while father hadn’t tested positive for fentanyl in the three months leading up to the hearing, father had also missed at least one UA within that timeframe. Throughout the case, father missed fifty-nine UAs, tested positive for controlled substances fifty-six times, and never provided a UA that was negative for all substances. Father consistently tested positive for methadone and marijuana at all times leading up to the hearing. ¶ 20 We acknowledge that at some point before the termination hearing father told the caseworker he had been prescribed a medical marijuana card. But father’s treatment plan required him to immediately notify the Division of any new prescriptions for medications and provide verification for those prescriptions. And father didn’t provide a signed release to allow the caseworker to contact the prescribing doctor until the morning of the termination 
9 hearing. Also, father never told his probation officer that he had a medical card. ¶ 21 The caseworker testified that father didn’t complete an intake or start any substance abuse treatment until eight months into the case. After father started treatment, he missed thirty-five out of sixty-one required treatment groups. There were only two weeks in which father attended all required groups, and one of those was the week before the termination hearing. ¶ 22 The family time supervisor testified that about two weeks before the termination hearing, when father arrived at his family time, he opened his van door and a very strong odor of marijuana was present. The supervisor testified that this incident raised safety concerns about father’s ability to safely transport the child anywhere. And after approximately nine months of feedback and coaching, the supervisor stated that father still struggled to implement the structure the child needed, plan ahead to provide a meal during family time, or consistently ensure that the child was completing her reading. ¶ 23 The caseworker opined that based on the child’s needs and father’s ongoing substance use, she didn’t believe father could be a 
10 safe and appropriate caregiver in the near future. The caseworker also opined that termination was in the child’s best interests because, throughout the case, father didn’t successfully address his substance use, nor was he able to meet the child’s needs despite receiving the same feedback and redirection for approximately nine months. ¶ 24 Last, as father points out, the EPP provisions didn’t apply because the child was over the age of six when the Division filed the petition in dependency and neglect. See §§ 19-1-102(1.6), 19-1-
123, C.R.S. 2023. However, the case commenced only seventeen days after the child’s sixth birthday. While the juvenile court didn’t apply the EPP provisions, it properly considered the child’s young age, time in out-of-home placement, and need for permanency in determining that father had been given a reasonable amount of time to address the issues in his treatment plan. See S.Z.S., ¶ 24 (a reasonable amount of time must be determined by considering the physical, mental, and emotional conditions and needs of the child). ¶ 25 In sum, the juvenile court determined that father couldn’t become fit within a reasonable time by considering the evidence showing father’s partial compliance and weighing it against the 
11 contrary evidence and the child’s needs. Because the record supports the court’s determination, we decline to disturb the judgment. III. Disposition ¶ 26 We affirm the judgment. JUDGE FOX and JUDGE GROVE concur.