23CA0982 Interest of JH 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0982 Archuleta County District Court No. 18JV12 Honorable Jeffrey R. Wilson, Judge In the Interest of J.H., a Child, and Concerning C.D., Appellee, and A.H., Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE NAVARRO Johnson and Hawthorne*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 The Law Firm of Lisa Ward, LLC, Lisa Ward, Donald Lawrence, Jr., Durango, Colorado, for Appellee Anne Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § (5)(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 A.H. (mother) appeals the district court’s judgment adjudicating C.D. as the legal father of J.H. (the child), which included the court’s order rejecting a magistrate’s earlier dismissal of C.D.’s petition for paternity and adjudication of B.D. (biological father) as the child’s legal father. We affirm. I. Background ¶ 2 In July 2018, C.D. filed a petition for paternity asking to be adjudicated the child’s legal father. C.D. admitted he was not the child’s biological parent but alleged that he was the legal father under the holding-out presumption in the Colorado Uniform Parentage Act (UPA), section 19-4-105(1)(d), C.R.S. 2023. His paternity claim was based on allegations that he received the child into his home and openly held out the child as his natural child while the child was under the age of majority. Mother objected to the petition and claimed that C.D. never held out the child as his own. Thereafter, biological father intervened in the case and completed a paternity test, which indicated a greater than 99.99% possibility that he was the child’s biological parent. Biological father requested that he be adjudicated the child’s legal father under the UPA. 
2 ¶ 3 In October 2019, a magistrate held a hearing on C.D.’s petition for paternity. The magistrate bifurcated the hearing so that the only issue to be decided was whether C.D. established a presumption of paternity. At the close of C.D.’s case, mother moved for a directed verdict, arguing that no evidence established that C.D. had openly held out the child as his natural child. After considering the parties’ supplemental briefing, the magistrate dismissed C.D.’s petition for paternity, finding that he did not establish a presumption under section 19-4-105(1)(d) because he had not hold out the child as his natural child. Then, finding no competing presumption of paternity, the magistrate adjudicated biological father as the child’s legal father. The magistrate’s written order included an advisement stating that “[a]ny appeal must be taken in accordance with Rule 7(b) of the Colorado Rules for Magistrates.” ¶ 4 Pursuant to the magistrate’s advisement and C.R.M. 7(b), C.D. directly appealed the magistrate’s order to this court. A division of this court dismissed the appeal for lack of jurisdiction, however, because section 19-1-108, C.R.S. 2023, required C.D. to seek review from the district court before he could appeal to this court, 
3 regardless of the magistrate’s C.R.M. 7(b) advisement. See In re Parental Responsibilities Concerning J.H., 2021 COA 94, ¶¶ 13-14 (J.H. I). The division determined that, while C.D.’s reliance on the magistrate’s erroneous advisement could not confer appellate jurisdiction, the district court could determine whether C.D.’s reliance on the advisement established a proper basis under the unique circumstances doctrine to excuse the untimely filing of a petition for review in the district court. Id. at ¶¶ 15-19. ¶ 5 On the same date this court issued the mandate returning jurisdiction to the district court, C.D. moved the district court to accept his untimely petition for review. He asserted that unique circumstances existed because he had reasonably relied on the magistrate’s erroneous advisement directing him to file an appeal to this court instead of a petition for review in the district court. Mother opposed, arguing that it was not reasonable for C.D.’s experienced counsel to rely on the magistrate’s erroneous advisement. ¶ 6 The district court did not make specific findings as to whether C.D.’s reliance on the magistrate’s advisement was sufficient to invoke the unique circumstances doctrine. Instead, the court ruled 
4 on the merits of C.D.’s petition for review, finding that the magistrate had incorrectly interpreted section 19-4-105(1)(d) by inserting a requirement that a person refer to a child as their “biological” or “genetic” child in order to establish the holding-out presumption. Thus, the court rejected the magistrate’s orders dismissing C.D.’s petition and adjudicating biological father as legal father. ¶ 7 Thereafter, the district court held a new hearing on C.D.’s petition for paternity. After the hearing, the court took the matter under advisement and later entered a written judgment, noting that biological father had an undisputed presumption of paternity based on genetic testing and finding that C.D. had established the holding-out presumption of paternity. The court then weighed the competing presumptions and found that it was in the child’s best interests to adjudicate C.D. as the child’s legal father. II. Acceptance of the Untimely Petition for Review ¶ 8 Mother first argues that the district court erred by accepting C.D.’s untimely petition for review because C.D. failed to establish grounds justifying his late filing. We disagree. 
5 A. Preservation ¶ 9 C.D. argues that mother failed to specify the precise location in the record where she raised the timeliness issue and where the district court ruled on the issue. We are not persuaded because mother argued, in her response to C.D.’s motion asking the court to accept the petition for review, that he had failed to establish grounds justifying the late filing of his petition. See Gebert v. Sears, Roebuck & Co., 2023 COA 107, ¶ 25 (to properly preserve an argument for appeal, a party must present “the sum and substance of the argument” to the trial court) (citation omitted). B. Applicable Law and Standard of Review ¶ 10 In a proceeding under Article 4 of the Colorado Children’s Code, a petition for review of a magistrate’s order must be filed within fourteen days. § 19-1-108(5.5), C.R.S. 2023. But the filing deadline set out by section 19-1-108(5.5) is not jurisdictional. C.S. v. People, 83 P.3d 627, 635 (Colo. 2004). Thus, a district court has jurisdiction to consider an untimely petition for review. Id. ¶ 11 Our supreme court has recognized that a district court may excuse the untimeliness of a petition for review when the delay is the result of excusable neglect. Id. Excusable neglect exists in a 
6 “situation where the failure to act results from circumstances which would cause a reasonably careful person to neglect a duty.” People in Interest of L.B-H-P., 2021 COA 5, ¶ 12 (quoting People in Interest of M.A.M., 167 P.3d 169, 172 (Colo. App. 2007)). Moreover, as noted in J.H. I, divisions of this court have recognized that a district court may excuse the untimeliness of a petition when the delay is the result of unique circumstances. See In re Marriage of Stockman, 251 P.3d 541, 543 (Colo. App. 2010). Unique circumstances exist “if a party reasonably relies and acts upon an erroneous or misleading statement or ruling by the trial court.” In Interest of C.A.B.L., 221 P.3d 433, 440 (Colo. App. 2009) (quoting People in Interest of A.J.H., 134 P.3d 528, 531 (Colo. App. 2006)). ¶ 12 We review a district court’s decision to entertain an untimely petition for review for an abuse of discretion. See M.A.M., 167 P.3d at 172. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it is based on an erroneous understanding or application of law. People in Interest of M.W., 2022 COA 72, ¶ 12. 
7 C. Analysis ¶ 13 Although mother argues that C.D. failed to establish excusable neglect, he did not attempt to establish excusable neglect to justify his late filing. Rather, he asked the district court to accept his untimely petition for review because his error was caused by his reliance on the magistrate’s erroneous advisement, which directed him to C.R.M. 7(b) instead section 19-1-108(5.5). And the cases mother cites to support her argument about excusable neglect did not involve a party’s reliance on a magistrate’s erroneous or misleading advisement. See L.B-H-P., ¶ 14 (the untimely filing of a petition for review was based on counsel’s misunderstanding of the filing deadline, medical condition, and other commitments); C.S., 83 P.3d at 633 (the untimely filing of the petition was based on counsel’s lack of awareness that a magistrate had entered the relevant order). Moreover, mother does not provide, and we have not found, any legal authority holding that a finding of excusable neglect is the only basis on which a district court may properly exercise its discretion to accept an untimely petition for review. ¶ 14 Next, citing Bowles v. Russel, 551 U.S. 205 (2007), mother argues that a district court cannot accept a late petition for review 
8 based on the unique circumstances doctrine because the United States Supreme Court has rejected this doctrine. The Bowles decision, however, was not rooted in federal constitutional law but in an interpretation of federal statutes and rules. Therefore, it does not control a Colorado court’s application of Colorado law. And the Colorado Supreme Court has not abolished the unique circumstances doctrine. Cf. Converse v. Zinke, 635 P.2d 882, 886 (Colo. 1981) (applying the unique circumstances doctrine). ¶ 15 At any rate, Bowles is inapposite. There, the United States Supreme Court decided that the unique circumstances doctrine could not be invoked to excuse the late filing of a notice of appeal because courts do not have the authority to “create equitable exceptions to jurisdictional requirements.” Bowles, 551 U.S. at 214. But, as noted above, the timely filing of a petition for review is not jurisdictional, unlike the timely filing of a notice of appeal. C.S., 83 P.3d at 635. Thus, the reasoning of Bowles has no application here. ¶ 16 To reiterate, C.D. argued that unique circumstances justified his late filing of the petition for review, and the district court accepted his petition and considered it on its merits. Thus, we 
9 presume that the court determined that C.D. had established sufficient justification for his untimely petition. That determination was not an abuse of discretion, particularly in consideration of the magistrate’s erroneous advisement. ¶ 17 Therefore, reversal is not warranted based on the district court’s acceptance of the untimely petition for review. Because the court reasonably exercised its discretion to entertain the untimely petition, we have jurisdiction to review the issues presented on appeal. See id. at 635-36. III. Rejection of the Magistrate’s Order ¶ 18 Mother contends that the district court erred by rejecting the magistrate’s order based solely on the magistrate’s erroneous statutory interpretation, without deferring to the magistrate’s factual findings. She asserts that, even under the court’s interpretation of section 19-4-105(1)(d) set out in its ruling on C.D.’s petition for review, the evidence presented at the hearing in front of the magistrate was sufficient to show that C.D. had failed to establish the holding-out presumption. In essence, mother argues that the magistrate’s erroneous interpretation of section 19-4-
10 105(1)(d) was harmless and, thus, the court’s rejection of the magistrate’s order was unwarranted. ¶ 19 C.D. argues that mother failed to preserve this argument, and we agree. ¶ 20 When, as here, a district court has reviewed a magistrate’s ruling, we effectively engage in a second layer of appellate review. People in Interest of N.G., 2012 COA 131, ¶ 37. A party must present a particular issue to the district court before that issue may be raised to us on appeal. See People in Interest of K.L-P., 148 P.3d 402, 403 (Colo. App. 2006). ¶ 21 In her response to C.D.’s petition for review, mother argued that the district court should reject C.D.’s argument that the magistrate’s statutory interpretation of the holding-out presumption was erroneous. Mother reiterated some of the magistrate’s factual findings and asserted that C.D. oversimplified the magistrate’s order. Mother also argued that the “law requires an open acknowledgement of the claims of ‘natural’ parentage.” But she never argued, as she does before this court, that the magistrate’s factual findings supported a determination that C.D. failed to establish the holding-out presumption under any interpretation of 
11 the statute. Although mother asserts that she preserved the argument in her C.R.C.P. 59 motion, she did not argue in that motion that, even under the district court’s interpretation of section 19-4-105(1)(d), the magistrate’s factual findings nonetheless supported a conclusion that C.D. failed to establish the holding-out presumption. Instead, mother argued that the district court’s interpretation of section 19-4-105(1)(d) was inconsistent with the intent or purpose of the statute. Because she did not present the sum and substance of her current argument to the district court, she did not preserve it for our review. See Gebert, ¶ 25. IV. Determination of Paternity ¶ 22 Lastly, mother contends that the district court erred by determining that C.D. was the child’s legal father. Mother asserts that, in its analysis of whether C.D. had established the holding-out presumption, the court improperly focused on whether he acted as a psychological parent instead of whether he held out the child as his “natural child.” Mother also asserts that the court failed to consider and address the pertinent statutory factors when weighing the competing presumptions of paternity. We disagree. 
12 A. Preservation ¶ 23 C.D. argues that mother failed to preserve her argument for appeal because she fails to cite to the specific place in the record where the argument was preserved and, instead, refers to a brief she filed before the magistrate entered its initial order determining paternity. We agree that mother’s statement that she “raised this issue repeatedly,” along with citations to the briefs she filed before the magistrate entered its initial order, do not meet the requirement to provide “the precise location in the record where the issue was raised and where the court ruled,” as required under C.A.R. 28(a)(7)(A). But C.A.R. 28(a)(7)(A) is a procedural rule that relieves us from the burden of having to search the record to determine whether an issue was raised and resolved in the trial courts. See O’Quinn v. Baca, 250 P.3d 629, 631 (Colo. App. 2010). And while we have no obligation to undertake such a search, in this case, it is clear that mother raised this issue to the district court. ¶ 24 Throughout the hearing in front of the district court, mother’s counsel repeatedly argued that the court could not consider the factors relevant to the allocation of parental responsibilities (APR) or the determination of whether a person is a psychological parent. 
13 And in closing argument, mother’s counsel asserted that the district court could not apply the “psychological parent statute” or the “sharing of parental responsibilities statute.” Thus, because mother presented the sum and substance of her argument to the district court, she preserved it for appeal. See Gebert, ¶ 25. B. Applicable Law and Standard of Review ¶ 25 Under the UPA, the determination of paternity involves two steps. See People in Interest of C.L.S., 313 P.3d 662, 666-67 (Colo. App. 2011). First, a court must determine whether one of the statutory presumptions of parentage in section 19-4-
105(1) applies. Id. at 666. As relevant to this appeal, a person is a presumed parent if the person “receives the child into the person’s home and openly holds out the child as the person’s natural child” or if genetic test results show that the alleged parent is not excluded as the probable genetic parent and that the probability of the person’s genetic parentage is ninety-seven percent or higher. § 19-4-105(1)(d), (f). Once a presumption is established, it may be rebutted only by clear and convincing evidence. People in Interest of K.L.W., 2021 COA 56, ¶ 70. 
14 ¶ 26 If competing presumptions are established and not rebutted, a court must move on to the second step of the analysis. C.L.S., 313 P.3d at 667. At that point, a court must apply a preponderance of the evidence standard to resolve the competing presumptions and determine which should control based on the weightier considerations of policy and logic. K.L.W., ¶ 70. No presumption is conclusive or “automatically eliminates other presumptions of parentage.” Id. at ¶ 67. In determining which of two competing presumptions controls, a court must consider all pertinent factors, including but not limited to those listed in section 19-4-105(2)(a)(I)-
(VIII). The result of this process is to find one person the child’s legal parent, while the other person becomes a “nonparent.” See C.L.S., 313 P.3d at 667. ¶ 27 We review de novo a challenge to a court’s application of the correct legal standards for determining parentage. K.L.W., ¶ 42. But we defer to a court’s factual findings if they are supported by the record. Id. C. Analysis ¶ 28 Mother, throughout her argument regarding the district court’s determination of paternity, refers to the evidence presented 
15 during the hearing in front of the magistrate and the magistrate’s factual findings. And mother implies that the district court should have considered the magistrate’s factual findings in conjunction with the evidence presented at the hearing in front of the district court. After the district court had rejected the magistrate’s order, however, it held a status conference at which the parties discussed whether the court would consider the evidence presented at the hearing in front of the magistrate. Mother’s counsel stated that she did not understand how the court could rely on the transcript of the magistrate’s hearing when the case turned on credibility, and the court agreed that it could not “pick up credibility” based solely on a transcript. Ultimately, the parties agreed that they would have an entirely new hearing and that the evidence presented at the hearing in front of the magistrate would not be considered. Accordingly, during the hearing in front of the court, mother’s counsel “reminded” the court that the parties had “agreed [they] were starting th[e] hearing afresh and that the transcripts from the prior hearing were not going to be entered in this case.” Therefore, in our review of the court’s determination of paternity, we consider only the evidence presented during the hearing in front of the court. 
16 1. The Holding-Out Presumption ¶ 29 C.D. asserted that he was the presumed father of the child under the holding-out presumption, which requires a person to prove that, while the child was under the age of majority, the person (1) received the child into their home and (2) held the child out as their natural child. See § 19-4-105(1)(d). Mother argues that C.D. failed to prove that he received the child into his home and, instead, proved only that he lived with mother and the child while his parents paid his portion of the rent. But section 19-4-
105(1)(d) does not state that a person must receive a child into their own, separate home to meet the presumption. And mother has not directed us to any legal authority supporting her position. Rather, the court found, with record support, that because C.D. received the child into the home he shared with mother, and they all lived together for the first four-and-a-half years of the child’s life, the statutory requirement was satisfied. ¶ 30 Mother also asserts that there was no credible evidence showing that C.D. held the child out as his natural child. But mother refers to the magistrate’s findings, not the district court’s findings, to support this argument. And the district court found, 
17 with record support, that C.D. had treated the child as his natural son by caring for him, taking him to be circumcised, taking him to and from preschool, and acting as if the child was his natural son in public. ¶ 31 It is true that, after the district court determined that C.D. had established his presumption by a preponderance of the evidence, the court did not specifically address whether mother had presented clear and convincing evidence to rebut the presumption. See K.L.W., ¶ 70 (once a presumption is established, it may be rebutted by clear and convincing evidence). But mother does not point us to the clear and convincing evidence she now claims showed that C.D. did not receive the child into his home or hold out the child out as his natural child. And our review of the record does not reveal such evidence. See L.S.S. v. S.A.P., 2022 COA 123, ¶ 39 (clear and convincing evidence is “evidence that is highly probable and free from serious or substantial doubt”) (citation omitted). Therefore, we discern no error in the district court’s determination that C.D. established an unrebutted presumption of paternity under section 19-4-105(1)(d). 
18 2. Competing Presumptions ¶ 32 Next, because the district court found that C.D. had met his presumption, and it was undisputed that biological father had a competing presumption under section 19-4-105(1)(f), the court was required to determine which presumption controlled. See K.L.W., ¶ 70. In conducting this fact-intensive inquiry, the court was required to focus on the best interests of the child and make the determination of paternity with that standard at the forefront. See C.L.S., 313 P.3d at 667. Although mother asserts that the burden of proof for weighing the presumptions was clear and convincing evidence, the court was required to apply the preponderance of the evidence standard to resolve unrebutted competing parentage presumptions and determine which should control. K.L.W., ¶ 70. ¶ 33 Mother asserts that the district court conflated the requirements of establishing paternity with the requirements for establishing that a party is a psychological parent or that a nonparent is entitled to parenting time. But mother simultaneously asserts that “the APR statute places the burden on a nonparent to overcome the presumption in favor of the biological parent.” Then, citing In re Parental Responsibilities Concerning B.J., 242 P.3d 1128 
19 (Colo. 2010), she argues that the district court erred by failing to make factual findings on the “special factors” on which it relied. We reject this argument because B.J. articulates the requirements that must be met for a court to allocate parenting time to a nonparent under sections 14-10-123 and -124, C.R.S. 2023. As mother repeatedly points out, the district court was required to apply only section 19-4-105 to determine paternity, and it would have been error for the court to consider the “special factors” related to determining parenting time discussed in B.J. ¶ 34 Moreover, the record shows that the district court considered the factors listed in section 19-4-105(2)(a) when determining which presumption should control. After specifically citing the factors listed in 19-4-105(2)(a), the court found, with record support, that biological father had shown little interest in being the child’s father, had never paid child support, and had seen the child on only four occasions. The court then found, with record support, that C.D. had been a part of the child’s first four-and-a-half years of life, that C.D. had moved to Texas to be closer to the child in hope that he would be able to participate in the child’s life again, and that the child still remembered C.D. and wanted to see him. Thus, in 
20 weighing the competing presumptions, the court found that it was in the child’s best interests for C.D. to be adjudicated as the child’s legal father. ¶ 35 Nonetheless, mother asserts that, because evidence showed that biological father was the genetic father who had exercised some parenting time with the child, the court erred by determining that it was in the child’s best interests for C.D. to be adjudicated as the child’s legal father. As noted earlier, however, no presumption — not even the presumption shown by biology — is conclusive or automatically eliminates other presumptions of paternity. See N.A.H. v. S.L.S., 9 P.3d 354, 361-62 (Colo. 2000). And the district court’s findings were based on its “determination as to the credibility of the parties and the witnesses.” Ultimately, we cannot reweigh the evidence and substitute our judgment for the court’s. See K.L.W., ¶ 62. As a result, we discern no error in the court’s adjudication of C.D. as the child’s legal father. V. Appellate Attorney Fees ¶ 36 We deny both parties’ requests for an award of appellate attorney fees. 
21 ¶ 37 C.D. requests appellate attorney fees under section 13-17-102, C.R.S. 2023, claiming that mother’s appeal was frivolous and that she did not comply with the requirements of C.A.R. 28. Although we reject mother’s arguments, we do not agree that they were frivolous or that they lacked substantial justification. Consequently, we decline to award fees to C.D. See In re Estate of Shimizu, 2016 COA 163, ¶ 34 (“Under section 13-17-102, an award of fees on appeal is appropriate only in clear and unequivocal cases where no rational argument is presented and thus, the appeal is frivolous.”). ¶ 38 Mother requests appellate attorney fees under section 13-17-
102, claiming that C.D.’s answer brief was vexatious. Given our disposition of this appeal, we decline to award fees to mother. VI. Conclusion ¶ 39 The judgment is affirmed. JUDGE JOHNSON and JUDGE HAWTHORNE concur.