The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 3, 2019

**2019COA151**

**No. 19CA0244, *People in Interest of IJO* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship — Criteria for Termination; Government — Interstate Compacts and Agreements — Interstate Compact on Placement of Children**

In this case, a division of the court of appeals concludes that a noncustodial, out-of-state parent's failure of a home study under the Interstate Compact on Placement of Children does not absolve the county Human Services Department of its obligation to exercise reasonable efforts to rehabilitate that parent and to reunify the family. Because it is unclear whether the juvenile court concluded that conducting the home study was sufficient reasonable efforts, we remand to the juvenile court to clarify its findings and conclusions.

COLORADO COURT OF APPEALS 2019COA151

Court of Appeals No. 19CA0244
Adams County District Court No. 17JV408
Honorable Katherine R. Delgado, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of I.J.O., a Child,

and Concerning M.S.O.,

Respondent-Appellant.

ORDER OF LIMITED REMAND

Division VII
Opinion by JUDGE TOW
J. Jones and Fox, JJ., concur

Announced October 3, 2019

Heidi M. Miller, County Attorney, Julie Thomerson, Assistant County Attorney, Westminster, Colorado, for Petitioner-Appellee

Niceta Bradburn, Guardian Ad Litem

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for Respondent-Appellant

¶ 1     M.S.O. (mother) appeals the juvenile court's judgment terminating the parent-child legal relationship between her and I.J.O. (the child). Mother — who upon the commencement of and throughout the juvenile court proceedings was the child's noncustodial natural parent and lived out of state — frames the issue as whether the court erred by applying the Interstate Compact on Placement of Children (ICPC) to the potential placement of the child with mother. But the substance of her argument is that the juvenile court erred by permitting the Adams County Human Services Department to absolve itself of the obligation to exercise reasonable efforts to rehabilitate mother and to reunify the family solely because mother failed the ICPC home visit.

¶ 2     The division, on its own motion, having considered the parties' briefs, remands the case to the juvenile court for the limited purpose of allowing the court to clarify its findings supporting termination of mother's parental rights.

## I.    Background

¶ 3     In December 2017, the Department filed a petition in dependency and neglect regarding the eight-year-old child. The

1

Department alleged that the child's father was unstable and that he was planning to take the child back to Ohio to live with mother. The Department also alleged that "[t]his family has [an] extensive child welfare history in Ohio including a removal from [both mother and father]."

¶ 4     The juvenile court adjudicated the child dependent and neglected. The court adopted a treatment plan for mother, requiring that she maintain contact with the Department and provide necessary releases, engage in initial treatment assessment and planning, abide by any resulting treatment plan, submit a hair follicle test to determine whether she had used controlled substances, and cooperate with an ICPC home study. The plan also called for mother to have regular telephone contact with the child, although the juvenile court later suspended these calls because they were traumatic and dysregulating for the child.[1]

---

[1] Dysregulation means "[a]bnormality or impairment in the regulation of a metabolic, physiological, or psychological process." Lexico Dictionary, https://perma.cc/D9P4-5QLG.

¶ 5      In July 2018, the Department moved to terminate mother's parental rights.  In January 2019, following a hearing, the juvenile court granted the Department's motion, terminating mother's parental rights.[2]

## II.      Standard of Review

¶ 6      We review de novo issues of law, including whether the juvenile court applied the correct legal standard.  *People in Interest of A.J.L.*, 243 P.3d 244, 249 (Colo. 2010).  We review the juvenile court's factual findings for clear error.  *Id.*  The credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it are within the court's discretion.  *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982).  Thus, we will not disturb the court's findings and conclusions if they have record support.  *Id.*

## III.      Applicable Law

### A.      The Termination Statute

¶ 7      The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been

---

[2] The juvenile court also terminated the child's father's parental rights.  That decision is not at issue in this appeal.

adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2019.

¶ 8    In determining whether a parent is unfit, the juvenile court must consider whether the Department made reasonable efforts to rehabilitate the parent.  § 19-3-604(2)(h).  The Department also must exercise reasonable efforts "to reunify the family whenever appropriate."  § 19-3-100.5(1), C.R.S. 2019.  Reasonable efforts "means the exercise of diligence and care throughout the state of Colorado for children who are in out-of-home placement."  § 19-1-103(89), C.R.S. 2019.  The reasonable efforts standard is deemed met if services are provided in accordance with section 19-3-208, C.R.S. 2019.  § 19-1-103(89); *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).  Efforts under section 19-3-208 include screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance

resources; visitation services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter.  § 19-3-208(2)(b); *see also* § 19-3-209, C.R.S. 2019 (requiring that an individual case plan be in place for all abused and neglected children and their families).

### B.    The ICPC

¶ 9      The ICPC is an interstate agreement in which all fifty states, the District of Columbia, and the U.S. Virgin Islands participate. Kurtis A. Kemper, Annotation, *Construction and Application of Interstate Compact on the Placement of Children*, 5 A.L.R. 6th 193, § 2 (2019).  In Colorado, the compact is codified at sections 24-60-1801 to -1803, C.R.S. 2019.  The purpose of the compact is to facilitate interstate cooperation and coordination of placement and provision of services to children being placed by one state's child protective services agency in a home in another state.  Kemper, 5 A.L.R. 6th 193, § 2.

¶ 10     The compact defines "placement" as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for

the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility." § 24-60-1802, art. II(d), C.R.S. 2019. Implementing regulations provide that the ICPC procedures "shall be initiated for children who are considered for placement out-of-state for . . . [h]omes of parents . . . ." Soc. Servs. Rule 7.307.31(B), 12 Code Colo. Regs. 2509-4.

¶ 11 Whether placement in an out-of-state, noncustodial parent's home falls within the ICPC is an unresolved question in this state. Nationwide, courts have answered this question both ways. *Compare* Kemper, 5 A.L.R. 6th 193, § 6 (discussing cases holding that the ICPC applies to out-of-state placement with a natural parent), *with id.* § 7 (discussing cases holding that the ICPC does not apply to such placements).

¶ 12 We need not resolve that question now. Even if the ICPC applies to placement with a natural parent, it cannot be applied in such a way as to relieve the Department of its obligations to exercise reasonable efforts to reunify the family. And the juvenile

court's findings do not make sufficiently clear whether that occurred in this case.

## IV. Application

¶ 13     Pursuant to the ICPC, the authorities in Ohio conducted a home study to ensure that mother's home would be a suitable environment for the child. After the home study, the Ohio authorities reported that mother's home was not approved for placement of the child. Specifically, they concluded that

> [mother] has an extensive history with [the Ohio child protection agency]. She has had children removed from her care. [Mother] and [mother's cohabiting boyfriend] both tested positive for marijuana. They were not forthcoming regarding their use. They initially reported that they were using marijuana daily but haven't used since January. Obviously, this is not true due to their positive drug screens. [Mother] was trying to avoid the random drug screen.

¶ 14     Based on this determination, the Colorado caseworker concluded that the child could not be lawfully placed with mother. Consequently, the caseworker did not make any drug treatment recommendations. Similarly, the Department did not provide mother with any assistance in obtaining therapy to reintegrate with

the child. From the Department's reports and the caseworker's testimony, the Department's view is quite clear: if an out-of-state parent fails the ICPC home study, the child cannot lawfully be placed with the parent; thus, the inquiry of whether a parent is unfit — as well as any obligation on its part to provide services to the parent — ends.

¶ 15 This is not, and cannot be, the law. Were the Department's view correct, the State could terminate a parent's rights without making any reasonable efforts to reunify the family. The out-of-state parent would be placed on equal footing with nonparents. Such an outcome would violate both federal law (as acknowledged in section 19-3-100.5) and the parent's constitutionally protected interest in his or her parental relationship with the child. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *People in Interest of A.M.D.*, 648 P.2d 625, 632 (Colo. 1982).

¶ 16 Imagine if the Department's view were applied to a parent within Colorado. Under this approach, the State could simply conclude "the parent's home is unsafe; therefore his or her rights can be terminated." This would be antithetical to the very construct

of the dependency and neglect procedures. These procedures contemplate that the child would be temporarily removed from the home, and the Department would make reasonable efforts to rehabilitate the parent, including making referrals to available treatment and counseling resources, providing financial assistance for transportation if necessary, and the like. Yet the Department offers no justification for why an out-of-state parent whose home is deemed inappropriate for placement under the ICPC is not entitled to the same efforts.

¶ 17    To the contrary, rather than end the inquiry, such a determination begins it. When an out-of-state natural parent fails an ICPC home study, the Department is obligated to make reasonable efforts to help that parent rectify the problems so that a home study can be passed.

¶ 18    That being said, while the Department in this case certainly misunderstood its obligations, it is less clear whether the juvenile court did.[3] Its findings reflect that it may have shared the

---

[3] The juvenile court clearly considered compliance with the ICPC to be applicable to a placement in an out-of-state parent's home.

Department's incorrect view of the law. For example, the court considered the home study to be "the major part of a treatment plan," and found that "because of all the issues identified [in the home study report], there were really no services that the [D]epartment could have provided to the mother in Ohio. She does not have the financial ability to participate in services here." The court then concluded that the Department had made reasonable efforts to rehabilitate mother.

¶ 19 Further, the juvenile court made several other findings focusing on aspects of mother's fitness that were related to the home study but arguably had significance independent of the failed home study. For example, the court noted mother's positive test for marijuana and her lack of honesty about her substance use.

¶ 20 But the juvenile court also made findings unrelated to the home study, observing that the phone calls between mother and the child had to be suspended because the child became so emotionally dysregulated by the calls. The court also characterized the trauma

Again, because we are not resolving that issue, we express no opinion as to the juvenile court's interpretation.

10

this child had experienced throughout his life as "horrific." And the court noted mother's past involvement with child protection authorities in Ohio related to the child.

¶ 21    Importantly, the juvenile court did not address why the Colorado caseworker could not have offered the services enumerated in section 19-3-208.[4] No counseling services were offered to mother. Nor were any referrals made to public and private assistance resources. It is unclear why the Department made no referrals to substance abuse treatment resources in Ohio, and why it did not consider whether financial assistance was available to assist mother in travelling to Colorado to attend therapy with the child. The caseworker acknowledged in her testimony that, had mother lived in Colorado, such referrals would have been considered.

¶ 22    We recognize that we review a juvenile court's finding of reasonable efforts for clear error. Even so, we must review de novo

---

[4] In its oral findings, the juvenile court did opine that it was "not sure the Department could have done anything, quite honestly, to address these issues." However, this does not appear to be a finding that an appropriate treatment plan could not be devised. *See* § 19-3-604(1)(b), C.R.S. 2019.

whether the court applied the correct legal standard. *See People in Interest of S.N.*, 2014 CO 64, ¶ 21 ("Whether a child is dependent and neglected is a mixed question of fact and law because resolution of this issue necessitates application of the dependency and neglect statute to the evidentiary facts."). We cannot confidently conduct such a review at this time because it is not entirely clear whether the juvenile court concluded that conducting the home study itself was sufficient reasonable efforts. Consequently, we remand to the juvenile court to clarify its findings and conclusions.[5]

## V.    Remand

¶ 23    On remand, we direct the juvenile court to make further findings regarding whether the Department made reasonable efforts (beyond merely facilitating the ICPC home study). Similarly, if the

---

[5] We note that a limited remand is not, and is not intended to be, routine. We take this step not because the juvenile court's factual findings were unclear, but because we cannot determine whether the juvenile court applied the correct legal standard in assessing what qualifies as reasonable efforts where the Department initiates an ICPC home study for an out-of-state natural parent.

juvenile court considers any other factor enumerated in section 19-3-604(2) to be relevant, it shall make explicit findings.

¶ 24     Within seven days of issuance of the juvenile court's order clarifying and/or making further findings, mother must forward a copy of the juvenile court's order to this court, and the case shall be recertified.  Upon recertification, a supplemental record consisting of the juvenile court's order, any pleadings filed on remand, and transcripts of any hearings held on remand shall be ordered.

¶ 25     The court further orders mother to notify this court in writing of the status of the court proceedings in the event that this matter is not concluded within twenty-eight days from the date of this order, and that mother must do so every twenty-eight days thereafter until the juvenile court issues its order on remand.

JUDGE J. JONES and JUDGE FOX concur.