23CA1888 Peo in Interest of CA 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1888 Jefferson County District Court No. 23JV30060 Honorable Ann Gail Meinster, Judge The People of the State of Colorado, Appellee, In the Interest of C.A., B.Al.A., B.An.A., and A.A., Children, and Concerning D.A., Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE DUNN Yun and Bernard*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Kimberly Sorrells, County Attorney, Cara J. Sweet, Assistant County Attorney, Golden, Colorado, for Appellee Samantha Metsger, Guardian Ad Litem, for C.A., B.Al.A., and B.An.A. Katherine Karstetter, Counsel for Youth, Denver, Colorado, for A.A. Patrick R. Henson, Office of Respondent Parents’ Counsel, Chelsea A. Carr, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this dependency and neglect action, D.A. (mother) appeals the judgment adjudicating A.A. (the youth) and her siblings, C.A., B.Al.A., and B.An.A. (the children), dependent and neglected. Because the juvenile court did not follow the proper procedure in adjudicating the youth and the children dependent and neglected, we reverse and remand for further proceedings. I. Background ¶ 2 In March 2023, the Jefferson County Division of Children, Youth and Families filed a petition in dependency and neglect, alleging that the youth and the children were impacted by substance abuse and physical abuse in the home. ¶ 3 Mother denied the allegations and requested a jury trial. On June 13, the morning of trial, the parties notified the juvenile court that they had reached an agreement to continue the adjudicatory hearing under section 19-3-505(5), C.R.S. 2023. ¶ 4 Though the parties had purportedly placed the terms of the deferred-adjudication agreement in writing, the county attorney explained to the juvenile court that because amendments were required, the parties would later file a signed, written agreement. In 
2 lieu of submitting a contemporaneous signed agreement, the county attorney read the agreement into the record. ¶ 5 As relevant here, the agreement provided that the youth and the children would return to mother’s care and custody that day with the understanding that mother would complete a substance use evaluation and “take randomized, monitored urine analysis three times per week.” But it further specified that if mother “were to miss or test positive, then the children would be removed again from the home.” ¶ 6 The parties also discussed the circumstances under which the frequency of urine analysis (UA) might be reduced. As part of that discussion, the county attorney stated that the “indicated UAs . . . also might be a mouth swab. It’s occasionally requested.” This was the only mention of mouth swabs during the June 13 hearing. ¶ 7 The juvenile court directed the guardian ad litem (GAL) to circulate the amended written deferred-adjudication agreement and then file the signed agreement. The GAL never filed a signed agreement. ¶ 8 Before accepting the deferred adjudication, the juvenile court advised mother of her rights but didn’t review the agreement’s 
3 terms. Mother then entered a no-fault admission that the youth and the children were dependent and neglected. Finding her admission to be knowing, voluntary, and intelligent, the court determined that it would “hold that admission in advance for 120 days and adopt the terms and conditions as stated on the record today for a deferred adjudication.” ¶ 9 Three days later, mother reported to a testing facility to provide a UA. The testing facility informed mother that the Division had requested a mouth swab. Though mother declined to provide a swab, she completed a monitored UA while at the facility. ¶ 10 Because mother had refused the mouth swab, the Division moved for temporary custody of the children and the youth. In its motion, the Division asserted that mother had agreed to sobriety testing with “either mouth swabs or urine analysis at the caseworker’s request” and that “[t]he record was made at the time regarding the importance of mouth swabs given some concern for the validity and possible tampering with the urine analysis testing.” At two later hearings, the caseworker similarly explained that the Division’s tampering concerns were “made in open court” and “put on the record on June 13.” 
4 ¶ 11 The juvenile court adopted the Division’s proposed protective custody order without modification. That order stated that mother had agreed to sobriety monitoring “through either urinalysis or mouth swabs at the Division’s discretion” and that mouth swabs “were intentionally included in the court’s previous orders due to concerns regarding possible tampering.” ¶ 12 The record of the June 13 hearing, however, contains only a single, somewhat ambiguous reference to mouth swabs that “might be” “occasionally requested.” Nowhere on the record did the county attorney outline the Division’s tampering concerns, mention a conversation with an expert regarding the need for mouth swabs, or state that the parties had agreed that the Division had discretion to require mother to provide a mouth swab instead of a UA. ¶ 13 Next, the GAL moved to revoke the deferred adjudication, alleging that (1) “[a]s on the Court record,” mother “was to submit sobriety monitoring as a [UA] or a mouth swab” at the Division’s request; (2) mother was asked to submit a mouth swab three days after reaching the agreement and refused; and (3) mother’s refusal to submit a mouth swab “violated the terms and conditions of the [d]eferred [a]djudication.” Mother objected to the motion and moved 
5 to amend the agreement’s terms, alleging that she “misunderstood the statements regarding mouth swabs and believed that mouth swabs would only be used in the event that she was unable to provide a UA and not that it would be at the discretion of the [Division].” ¶ 14 Over a month after the June 13 hearing, and after the GAL moved to revoke the deferred adjudication, the Division submitted a proposed written deferred-adjudication order. The proposed order stated that “the specific terms of the deferred adjudication” included, in pertinent part, that “the parties may request [mother] to submit a urinary analysis or a mouth swab for sobriety monitoring.” The juvenile court adopted the proposed order without modification. ¶ 15 At the hearing on the motion to revoke the deferred adjudication — and at the GAL’s specific request — the juvenile court limited evidence to “[w]hether or not [m]other refused to do a mouth swab” when she went for sobriety testing and “whether or not that’s . . . a violation of the deferred that revokes it.” Neither the Division nor the GAL presented any evidence about the status of the youth or the children. 
6 ¶ 16 The juvenile court granted the GAL’s motion, found mother’s motion to amend moot, and adjudicated the youth and the children dependent and neglected. The court later adopted a treatment plan for mother. II. Analysis ¶ 17 Mother contends that the juvenile court erred by revoking the deferred adjudication when, in her view, the terms of the agreement regarding the mouth swabs were unclear. A. The Agreement ¶ 18 Mother and the Division dispute the terms of the deferred-
adjudication agreement and whether mother violated the agreement’s terms. The problem for us, however, is that the record from the June 13 hearing leaves unanswered what off-the-record conversation occurred with respect to mouth swabs. And, as we’ve explained, no signed deferred-adjudication agreement was filed. ¶ 19 True, the existence and terms of an oral contract are generally fact questions. Tuscany Custom Homes, LLC v. Westover, 2020 COA 178, ¶ 52; see Huddleston v. Union Rural Elec. Ass’n, 841 P.2d 282, 291 n.12 (Colo. 1992). But here, the June 13 record doesn’t have any information about the parties’ agreement as to mouth swabs. 
7 Given that, we are unable to defer to the juvenile court’s findings regarding the agreement’s alleged terms as to mouth swabs. See People in Interest of I.J.O., 2019 COA 151, ¶ 6 (we defer to the juvenile court’s factual findings unless they are clearly erroneous and unsupported by the record). ¶ 20 Without more, we are unable to resolve the parties’ factual dispute about the terms of the deferred-adjudication agreement with respect to mouth swabs. See id.; see also Madrid v. People, 365 P.2d 39, 41 (1961) (giving no consideration on appeal to an off-
the-record conference); cf. People v. Jowell, 199 P.3d 38, 45 (Colo. App. 2008) (remarking that appellate courts “cannot conduct a meaningful review on appeal” when the record doesn’t include the necessary materials). B. Adjudication ¶ 21 Even so, we are persuaded by the youth’s position — outlined in her answer brief — that the juvenile court erred by failing to follow the proper procedures before adjudicating her and the children dependent and neglected. ¶ 22 We review de novo whether the juvenile court applied the correct legal standard. I.J.O., ¶ 6. 
8 ¶ 23 The Children’s Code authorizes the state to intervene in familial relationships to protect a child from abuse, neglect, or abandonment. People in Interest of N.G., 2012 COA 131, ¶ 18. To invoke the juvenile court’s jurisdiction, the Division must file a petition setting forth the facts establishing that the child is dependent and neglected under section 19-3-102, C.R.S. 2023. People in Interest of J.W. v. C.O., 2017 CO 105, ¶ 26. ¶ 24 An adjudicatory hearing is then scheduled at which the Division carries the burden to establish, by a preponderance of the evidence, that the child is dependent and neglected. See People in Interest of M.H-K., 2018 COA 178, ¶ 14. A parent may demand a jury trial at the adjudicatory stage. §§ 19-3-202(2), 19-3-505(1), C.R.S. 2023. A parent may alternatively waive this right and admit all or part of the petition, provided that the parent is “fully advised . . . as to all rights and the possible consequences of a finding that a child is dependent or neglected.” C.R.J.P. 4.2(a). ¶ 25 If the juvenile court finds that the petition’s allegations are supported by a preponderance of the evidence, the court shall sustain the petition and enter an order adjudicating the child dependent or neglected. § 19-3-505(7)(a). If the allegations are not 
9 supported by a preponderance of the evidence, the court shall dismiss the petition. § 19-3-505(6). ¶ 26 If the juvenile court finds the petition’s allegations are supported, and with the parties’ consent, the court may “continue” the adjudicatory hearing for up to six months. § 19-3-505(5)(a)-(b). On review, it may continue the case for an additional six months, “after which the petition shall either be dismissed or sustained.” § 19-3-505(5)(b). This is known as a “deferred adjudication.” ¶ 27 Though the statute doesn’t address what happens if a deferred adjudication is revoked, see § 19-3-505(5)(a)-(b), a division of this court concluded that continuation of the adjudicatory hearing under section 19-3-505(5) “contemplates reconsidering the child’s status before entering the adjudicatory order,” N.G., ¶ 23. The “reconsideration should be accompanied by any additional findings required to address new evidence and the child’s current status.” Id.; see also K.D. v. People, 139 P.3d 695, 699 (Colo. 2006) (noting that adjudication relates to the status of the child as of the date of adjudication). Thus, a parent’s “limited admission” made within the deferred adjudication does “not provide a sufficient foundation for a formal adjudication because [the parent was not] afforded an 
10 opportunity to contest the adjudication.” People in Interest of T.W., 2022 COA 88M, ¶ 38. C. The Adjudication Order Didn’t Consider the Youth and Children’s Current Status ¶ 28 The GAL’s motion to revoke the deferred adjudication alleged that mother violated the deferred adjudication by refusing a mouth swab. The motion asked only that the juvenile court revoke the deferred adjudication. It didn’t request the court to adjudicate the youth and the children dependent and neglected. ¶ 29 At the hearing on the motion, the parties presented no evidence about the current status of the youth or the children. The GAL reiterated that the only issue was whether mother declined to take a mouth swab when she went for sobriety testing, and both the GAL and county attorney objected to evidence that might have been relevant to determining the youth and children’s status at the time of the hearing. ¶ 30 Beyond that, the record contains no signed deferred-
adjudication agreement, and nothing in the June 13 transcript or the juvenile court’s deferred adjudication order provides that the 
11 youth and the children would be adjudicated dependent and neglected if mother didn’t comply with the agreement.
1 ¶ 31 Absent an agreement to the contrary, the juvenile court must reconsider the child’s status and make the appropriate findings before adjudicating the child dependent and neglected. N.G., ¶ 23. Because the juvenile court didn’t do so here, it erred. And this error was not harmless because adjudicating the youth and the children dependent and neglected without hearing evidence regarding their status influenced the outcome of the case, impaired the basic fairness of the trial, and affected the substantial rights of both mother and the youth. See People in Interest of C.C., 2022 COA 81, ¶ 20; see also T.W., ¶ 35 (explaining that due process “includes the right to test the merits of the petition at an adjudicatory trial”). ¶ 32 Because we reverse the judgment adjudicating the youth and the children dependent and neglected, we necessarily reverse the 1 Though the agreement included terms for removing the youth and the children from the home, the procedure and effect of entering temporary custody orders are different from those for adjudicating children dependent and neglected. Compare §§ 19-3-403, -405, C.R.S. 2023 (temporary protective custody), with § 19-3-505, C.R.S. 2023 (adjudicatory hearing). 
12 related dispositional order. See People in Interest of G.E.S., 2016 COA 183, ¶ 1. III. Disposition and Instructions ¶ 33 We reverse the adjudicatory judgment and dispositional order and remand the case to the juvenile court for further proceedings. On remand, mother must be given the opportunity to assert her right to an adjudicatory hearing. The court shall not rely on mother’s previous no-fault admission. ¶ 34 If mother reasserts her right to an adjudicatory hearing, the juvenile court must hold an evidentiary hearing to address the current status of the youth and the children and make all required findings before adjudicating the youth or the children dependent or neglected. JUDGE YUN and JUDGE BERNARD concur.