24CA0256 Marriage of Lomakine 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0256
Arapahoe County District Court No. 16DR30291
Honorable Kimberly Karn, Judge

---

In re the Marriage of

Ludmila Vladimirovna Kamaeff,

Appellee,

and

Evgueni Lomakine,

Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

The Law Office of John Bellinger, LLC, John Bellinger, Denver, Colorado, for Appellee

MDS Legal Consultants, LLC, Melissa Drazen-Smith, Denver, Colorado, for Appellant

¶ 1    In this post-dissolution of marriage case, Evgueni Lomakine appeals the district court's entry of a permanent protection order restraining his contact with his ex-wife, Ludmila Vladimirovna Kamaeff. We affirm.

## I.    Background

¶ 2    In 2016, Lomakine and Kamaeff dissolved their marriage. On October 12, 2022, Kamaeff sought a civil protection order against Lomakine, alleging threats and acts of domestic violence, stalking, sexual assault, unlawful sexual contact, and physical assault. That same day, the district court entered a temporary protection order (TPO).

¶ 3    On October 25, the court held a hearing to decide whether to make the TPO permanent. During the hearing, Lomakine's counsel advised the court that the parties had stipulated to amend certain provisions of the TPO and to extend it for one year, "[a]nd that if there are no violations, [the amended TPO] would be dismissed as of October 24, 2023." The court accepted the parties' agreement to modify and extend the TPO for a year, entered an amended TPO, and scheduled the next hearing date for October 23, 2023. The

court advised that "if the parties do not appear, [the amended TPO] will just automatically expire."

¶ 4     The amended TPO required Lomakine to remain at least 100 yards away from Kamaeff, her home, her workplace, and her condominium in Florida.  It also required Lomakine to surrender all of his firearms and prohibited him from, among other things, contacting, harassing, stalking, intimidating, or threatening Kamaeff.

¶ 5     On October 19, 2023, Kamaeff's counsel filed and served an exhibit list, disclosing nearly thirty anticipated exhibits for use at the permanent protection order (PPO) hearing scheduled for four days later.  On the morning of the October 23 hearing, the court called the case "for the permanent restraining order hearing."  Both parties and their counsel appeared.

¶ 6     Lomakine's counsel began by requesting clarification on whether the amended TPO would be automatically dismissed, noting that the minute order entered after the TPO hearing indicated that the amended TPO would be dismissed if no violations occurred.  Lomakine's counsel acknowledged that there were "statutory standards" the court must apply and expressed

uncertainty about "how to approach [the parties' agreement reflected in the minute order] given the statute." In response, Kamaeff's counsel informed the court that "there have been new violations that we intend to present evidence on, so we'll be presenting as to her complaint and the new violations." Lomakine's counsel did not object. The court continued the hearing to the afternoon to accommodate a Russian interpreter and instructed counsel, "If you need to bring that up again this afternoon, please do so."

¶ 7    When the court called the case again later that day, both parties' attorneys affirmatively said that they were ready to proceed. Again, Lomakine's counsel did not object to proceeding with the hearing on Kamaeff's complaint for a civil protection order or on the alleged violation of the amended TPO.

¶ 8    Kamaeff testified that Lomakine had physically, sexually, and verbally abused her and that the abuse continued until the TPO was issued. She also testified that after the amended TPO was put in place, Lomakine used his business to buy a condominium unit located less than 100 yards away from her Florida condo, and she was unsure if he had surrendered his firearms, all of which made

3

her afraid. Kamaeff presented several exhibits, including audio recordings of Lomakine making threats against her or her daughter, as well as photographs of guns that he had kept in the house.

¶ 9     Lomakine testified and denied abusing Kamaeff in any way. He acknowledged buying the Florida condo but claimed he had never actually been there. He explained that he bought the unit because he had nowhere to live after Kamaeff "stole all his properties," the unit was near a small Russian community, and living in Florida would accommodate his physical disability.

¶ 10     After considering the evidence, the court determined that (1) Lomakine had committed acts "constituting grounds for the issuance of the civil protection order," and (2) "unless he is restrained on a permanent basis, he will continue to commit such act or acts, [or] other acts designed to retaliate or intimidate against Ms. Kamaeff." The court entered a PPO.

## II.     Procedural Due Process

¶ 11     Lomakine contends that the district court violated his procedural due process rights by failing to (1) ensure he had adequate notice of the October 23 PPO hearing and (2) make a threshold finding that the amended TPO had been violated before

4

making it permanent. Because these issues were not preserved, we will not address them on their merits.

## A. Generally Applicable Law

¶ 12 If an argument was "never presented to, considered by, or ruled upon by a district court," it "may not be raised for the first time on appeal." *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25. To preserve an issue for appeal in a civil case, "the party asserting the argument must present 'the sum and substance of the argument' to the district court." *Id.* (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50). Talismanic language is not required to preserve an issue, but the court must be alerted to it and have the opportunity to rule on it. *See In re Estate of Owens*, 2017 COA 53, ¶ 21.

## B. Analysis

¶ 13 Lomakine contends that the district court failed to ensure his procedural due process rights were protected. He claims that he was not provided adequate notice that the PPO hearing would address a violation of the amended TPO or the entry of a PPO because the parties had stipulated that the amended TPO would be

dismissed automatically absent a violation. We conclude that Lomakine failed to preserve these issues. *See Gebert,* ¶¶ 25-26.

¶ 14 As an initial matter, we note that Lomakine's opening brief fails to comply with C.A.R. 28(a)(7) because it does not identify "the precise location in the record where the issue was raised and where the court ruled." We expect counsel to read, be familiar with, and comply with the Colorado Appellate Rules. *Patterson Recall Comm., Inc. v. Patterson,* 209 P.3d 1210, 1220 (Colo. App. 2009). And we may impose sanctions for the failure to comply with the rules, including refusing to consider certain arguments or dismissing an appeal. *See* C.A.R. 38(a); *Bruce v. City of Colorado Springs,* 252 P.3d 30, 32 (Colo. App. 2010) ("Ordinarily, we would summarily strike plaintiff's briefs and dismiss the appeal" for failure "to meet the basic requirements of C.A.R. 28."); *O'Quinn v. Baca,* 250 P.3d 629, 631 (Colo. App. 2010) (declining to address an issue because the parties failed to direct the court to a place in the record where the issue was raised and ruled on); *Castillo v. Koppes-Conway,* 148 P.3d 289, 291-92 (Colo. App. 2006) (refusing to consider the arguments on appeal because the opening brief violated C.A.R. 28).

¶ 15     Even so, our review of the record reveals that Lomakine's counsel did not raise, nor did the district court rule on, Lomakine's claims that he received inadequate notice or that the court was required to make a threshold finding that he violated the amended TPO.  While Lomakine's counsel expressed confusion at the start of the PPO hearing about how the parties and the court would proceed, he did not object when Kamaeff's counsel explained that she intended to present evidence of a violation of the amended TPO and to request a PPO.  Nor did he raise these arguments when the hearing reconvened, despite being invited to do so by the court.  Nor did he object to Kamaeff's testimony about Lomakine's past conduct in relation to her request to make the amended TPO permanent.

¶ 16     Indeed, the first time Lomakine raised either of these arguments was in a C.R.C.P. 59 motion, which did not preserve them for appellate review.  *See Fid. Nat'l Title Co. v. First Am. Title Ins. Co.*, 2013 COA 80, ¶ 51 (arguments raised for the first time in a post-trial motion are not preserved for appellate review).  Accordingly, we will not consider these claims of error.  *See id.*; *Gebert*, ¶ 25.

## III.  Criteria for the PPO

¶ 17     Lomakine contends that Kamaeff presented insufficient evidence to establish that he violated the amended TPO.  His argument assumes that the district court needed to make a threshold finding that he violated the amended TPO before it could enter the PPO.  As noted, Lomakine did not preserve this contention.  But to reach his sufficiency challenge, which need not be preserved, *see People in Interest of D.B.*, 2017 COA 139, ¶ 30 ("[A] party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings."), we must first determine whether the correct legal standard requires the court to make that finding.  If the court was not obligated to find that Lomakine violated the amended TPO to issue the PPO, then it does not matter whether sufficient evidence supported that finding.  Because we conclude that the court was required to and did correctly apply the statutory criteria for entering a PPO, which does not require a finding that Lomakine violated the amended TPO, Lomakine's sufficiency challenge necessarily fails.

A.     Applicable Law and Standard of Review

¶ 18     Section 13-14-104.5, C.R.S. 2024, authorizes a court to issue a temporary or permanent civil protection order to prevent, as relevant here, assaults and threatened bodily harm, domestic abuse, sexual violence, and stalking. § 13-14-104.5(1)(a)(I)-(II), (IV)-(V). If "after hearing the evidence" the court is "fully satisfied that sufficient cause exists," it may issue a TPO and command the respondent to appear "to show cause, if any, why the temporary civil protection order should not be made permanent." § 13-14-104.5(8)(a).

¶ 19     At the PPO hearing, the court "shall examine the record and the evidence" to decide whether to make the TPO permanent or to enter a PPO on different terms. § 13-14-106(1)(a), C.R.S. 2024. To issue a PPO, the court must find by a preponderance of the evidence that the person to be restrained (1) "has committed acts constituting grounds for the issuance of a civil protection order," and (2) unless restrained, "will continue to commit the acts or acts designed to intimidate or retaliate against the protected person." § 13-14-106(1)(a). The grounds for issuing a civil protection order

are those set forth in section 13-14-104.5(1)(a), listed above.  *See Martin v. Arapahoe Cnty. Ct.*, 2016 COA 154, ¶ 20.

¶ 20    Whether a trial court applied the correct legal standard is a question of law that we review de novo.  *See People in Interest of I.J.O.*, 2019 COA 151, ¶ 6.  We also review de novo issues of statutory interpretation.  *See Mendoza v. Pioneer Gen. Ins. Co.*, 2014 COA 29, ¶ 9.  But we defer to the trial court's weighing of the evidence and will not disturb its findings of fact if they have record support.  *See In re Marriage of Smith*, 2024 COA 95, ¶ 50.

### B.    Analysis

¶ 21    Lomakine contends that the district court had to make a threshold finding that he violated the amended TPO because the parties stipulated to that requirement at the October 25, 2022, hearing, and the court adopted the parties' stipulation.  We are not persuaded.

¶ 22    We acknowledge that during the TPO hearing, Lomakine's counsel represented that the parties had agreed "that if there are no violations, [the amended TPO] would be dismissed."  The minute order from that hearing also reflects the parties' agreement to that term, among others, and provides that the "court approves

extending the TPO for one year under the conditions stated above."
But the transcript from the TPO hearing reflects that the court did
not adopt that term as a prerequisite to entering a PPO. Based on
the court's comments, the only circumstance under which the
amended TPO would "automatically expire" was if "the parties do
not appear" at the next hearing. Both parties and their counsel
appeared at that hearing.

¶ 23 More importantly, the amended TPO itself contains no such
condition. To the extent the court's comments at the TPO hearing
and the minute order entered after that hearing could be
understood as reflecting the court's adoption of the condition, they
would conflict with the written order, and the written order
controls. *See Reed v. Indus. Claim Appeals Off.*, 13 P.3d 810, 813
(Colo. App. 2000) ("[I]f there is a conflict between oral and written
findings, it is the written order that controls."); *In re Marriage of
West*, 94 P.3d 1248, 1250 (Colo. App. 2004) (the trial court's oral
remarks or findings are not final and may be modified until reduced
into writing, dated, and signed); *see also* C.R.C.P. 58.

¶ 24 Instead, the court had to apply section 13-14-106(1)(a), which
authorizes the court to issue a PPO if it finds by a preponderance of

11

the evidence that the person to be restrained (1) "has committed acts constituting grounds for the issuance of a civil protection order," and (2) unless restrained, "will continue to commit the acts or acts designed to intimidate or retaliate against the protected person." *See In re Marriage of Wollert*, 2020 CO 47, ¶ 20 ("If the language of a statute is clear, we apply it as written without resorting to other tools of statutory construction."). Under the statute, these two elements were all the district court had to find to enter the PPO.[1] The court found that Lomakine had committed acts constituting grounds to issue a PPO and that he would continue to retaliate or intimidate Kamaeff unless restrained. Lomakine does not challenge these findings, which are supported by the record.

¶ 25    Kamaeff testified that Lomakine "always" forced her to have sex, explaining that their sexual relationship became nonconsensual as early as 2010. She recounted an incident in 2019, years after they were divorced, during which Lomakine

---

[1] To the extent Lomakine argues that the district court had to make findings required by statutes criminalizing a violation of the amended TPO, we reject that argument because this case was not a criminal prosecution for violation of a TPO but a civil hearing on whether to make the amended TPO permanent, which was governed by section 13-14-106(1)(a), C.R.S. 2024.

grabbed her by the hair and pressured her to perform oral sex. Kamaeff testified that Lomakine would threaten her, telling her "[t]he last bullet will be yours" every time he was drunk, and she presented audio recordings supporting that testimony. Kamaeff also testified that Lomakine would hit her in places on her body that had been injured in a 2015 car accident. At the conclusion of the evidence, the court determined that Kamaeff "described a long history of domestic violence perpetrated by Mr. Lomakine," which was supported by credible evidence, and that "Ms. Kamaeff is in danger from Mr. Lomakine."

¶ 26 The court further determined that Lomakine "purchasing [the] condo is an act of intimidation and further threats and that without this protection order being made permanent, Ms. Kamaeff is in danger from Mr. Lomakine." In addition, although Lomakine testified at the PPO hearing that he had complied with the TPO requirement that he relinquish all of his firearms, he effectively admitted that he did not comply when he filed an affidavit of relinquishment the day *after* the PPO hearing, which reflected that a licensed firearm dealer received Lomakine's firearms that same day.

¶ 27    Because the district court made the findings required by section 13-14-106(1)(a), and those findings have record support, we will not disturb them or the court's conclusion based on them. *See Smith*, ¶ 50. We perceive no error in the district court's entry of the PPO. *See I.J.O.*, ¶ 6; *Mendoza*, ¶ 9.

## IV.    Disposition

¶ 28    The permanent civil protection order is affirmed.

JUDGE J. JONES and JUDGE YUN concur.

14