25CA1194 Peo in Interest of SS 05-21-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1194
Adams County District Court No. 20JV264
Honorable Emily Lieberman, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.S., a Child,

and Concerning S.D. and M.S.,

Appellants.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

---

Heidi Miller, County Attorney, Deborah Kershner, Assistant County Attorney, Westminster, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant S.D.

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant M.S.

¶ 1     S.D. (mother) and M.S. (father) appeal the judgment terminating their parent-child legal relationships with S.S. (the child).  We affirm.

## I.     Background

¶ 2     This case has a lengthy history and one previous appeal. *People in Interest of S.S.*, (Colo. App. No. 22CA1012, March 30, 2023) (not published pursuant to C.A.R. 35(e)) (*S.S. I*).  The parents have five children, each of whom was separately involved in dependency and neglect proceedings with county departments in Adams and Arapahoe counties and in Delaware.

¶ 3     Because the division in *S.S. I* set forth the history of the case, we repeat only the facts and procedural history relevant to this appeal.

¶ 4     As pertinent here, in *S.S. I*, the parents appealed the termination judgment.  A division of this court reversed the judgment as to mother, concluding that the record did not establish that the Department made reasonable accommodations as required by the Americans with Disabilities Act of 1990 (ADA).  The division affirmed the judgment as to father but remanded for an evidentiary hearing on his claim of ineffective assistance of counsel.  On

remand, the juvenile court determined father had received ineffective assistance and vacated the termination judgment.

¶ 5 Shortly thereafter, the Adams County Human Services Department (the Department) again moved to terminate the parents' parental rights. At that time, the parents were living in Delaware. Following an eight-day hearing, the court terminated both parents' parental rights.[1]

## II. Termination Criteria and Standard of Review

¶ 6 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 7 The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in*

---

[1] At the time of the second termination hearing, parental rights were terminated as to children M.J. and R.S., while the cases involving Ma.S. and G.S. were ongoing.

2

*Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those findings. *Id.*

¶ 8 "The credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are within the discretion of the [juvenile] court." *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We therefore do not reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

### III.  Father's Arguments

¶ 9 Father contends that the juvenile court erred by finding that (1) he did not substantially comply with his treatment plan; (2) the Department made reasonable efforts; and (3) he could not become fit within a reasonable time. Each of these contentions is addressed in turn.

### A.  Treatment Plan Compliance

¶ 10 We first address father's contention that the juvenile court erred by finding that he did not substantially comply with his treatment plan. We disagree.

### 1. Applicable Law

¶ 11    A treatment plan is considered successful only if it renders the parent fit. *People in Interest of C.A.K.*, 652 P.2d 603, 611 (Colo. 1982). Partial compliance, or even substantial compliance, may not result in a successful plan that renders the parent fit. *People in Interest of D.M.W.*, 752 P.2d 587, 588 (Colo. App. 1987). It is the parent's responsibility to ensure compliance with, and the success of, the treatment plan. *People in Interest of A.H.*, 736 P.2d 425, 428 (Colo. App. 1987).

### 2. Analysis

¶ 12    Father's treatment plan required him to: (1) meet the child's needs in a safe and stable home; (2) cooperate with the Department and other professionals; (3) ensure the child had a sober caregiver able to meet his needs; (4) work with in-home service providers; (5) undergo a domestic violence assessment and participate in treatment; and (6) participate in substance use monitoring, complete substance use and mental health assessment, and follow all recommendations.

¶ 13    The juvenile court acknowledged that father complied with certain aspects of his treatment plan and found that he had

4

- "mostly" cooperated with the Department, though he had previously been inconsistent in communicating with caseworkers;

- completed an online parenting class and a combined mental health and substance use diagnosis evaluation;

- finished domestic violence curriculum, though concerns about the safety of the parents' relationship remained;

- demonstrated "months of sobriety at one time in [the] case," but had not maintained sobriety for nearly a year before the termination hearing; and

- enrolled in mental health services.

¶ 14    Ultimately, the court found that father made "insufficient progress on his treatment plan" because he was not able "to mitigate the issues related to substance use and mental health," and had only "recently begun to consistently engage in services." Notably, the court found that father did not consistently attend mental health treatment. Despite a period of sobriety, the evidence showed that father continued to use substances and "doesn't wish to maintain sobriety and continues to disagree that [substance use] impacts the safety of [the child]."

¶ 15     The court further observed that the "most current information" regarding the family home indicated it was unsafe for the child. And while the court acknowledged that the Department did not refer father to in-home services in Delaware, it found that this was because the Department "appropriately prioritized" mental health and substance use services.

¶ 16     On appeal, father points us to the favorable evidence in the record and claims he "was substantially compliant with the treatment plan." However, his argument would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29. Additionally, father disregards the court's finding that, even considering his compliance with certain aspects of the treatment plan, the plan was not successful in rehabilitating him. And because compliance alone is insufficient to render a parent fit, we reject father's argument. *See C.A.K.*, 652 P.2d at 611 ("The fact that an individual fulfills the tasks and duties enumerated in the treatment plan does not mean that the individual will be able to meet his responsibilities as a parent.").

¶ 17 To the extent that father argues the Department should have modified his treatment plan after he moved out of state, he does not argue his treatment plan was inappropriate. Even still, the court found the treatment plan appropriate and capable of success, stating that any "failure to amend the treatment plan as circumstances changed in [the] case [did] not render it inappropriate." And the caseworker testified that because the original concerns persisted, and the only change was father's state of residence, the treatment plan was not modified after the first termination judgment was vacated.

¶ 18 Accordingly, we decline to disturb the juvenile court's finding that father did not comply with his treatment plan.

## B. Reasonable Efforts

¶ 19 Father next contends that the Department did not make reasonable efforts because it failed to (1) provide adequate referrals for services in Delaware; (2) remain in contact with him for six months; (3) facilitate in-home services; (4) assist with transportation; and (5) provide in-person family time and continuous access to virtual family time. We perceive no basis for reversal.

### 1. Applicable Law

¶ 20    Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate parents and reunite families.  §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025.  "Reasonable efforts" is defined as the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 21    Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

¶ 22    The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the

completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But it is the parent's responsibility to utilize the services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment when determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 23      Whether the department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and will not disturb them if they have record support. *Id.*; *see also People in Interest of I.J.O.*, 2019 COA 151, ¶ 6. However, we review de novo the juvenile court's legal determination of whether the department satisfied its reasonable efforts obligation based on those findings. *A.S.L.*, ¶ 8.

2.    Analysis

¶ 24      The juvenile court found that father's lack of engagement — and the difficulty connecting with out-of-state providers rather than

9

any lack of effort by the Department — impeded his successful reunification with the child.

¶ 25    Specifically, the court cited father's inconsistent communication with the Department, his refusal to work with alternative service providers, his insistence that he had completed his treatment plan, and the Delaware providers' failure to respond promptly to the Department's inquiries. The record supports the court's findings.

¶ 26    First, father asserts that, aside from one inconveniently located service provider, the Department failed to offer any referrals or services after he relocated to Delaware. Two Department caseworkers acknowledged that arranging referrals and services for out-of-state parents is more challenging than for those in-state, often requiring a service navigator to investigate and identify nearby options. However, after relocating to Delaware, father quickly reported that he already had mental health and substance use services in place. It later emerged that his chosen provider was run by his sister, raising potential conflicts of interest. The Arapahoe County caseworker repeatedly raised those concerns with father; however, he consistently reported he did not want to seek treatment

elsewhere. Still, the caseworker, in coordination with all departments involved, recommended five alternative providers, but father declined to switch services. *See A.V.*, ¶ 12 (the Department's obligation to make reasonable efforts does not include making efforts it knows to be futile).

¶ 27 Later, father switched to a service agency unaffiliated with his family, reportedly offering therapy, substance use treatment, and urinalysis testing. And this was again an agency that father located on his own, without assistance from the Department. At that time, father also began reporting to caseworkers that he was participating in services and had completed all requirements of his treatment plan. This information proved difficult to verify because providers did not timely respond to information requests. Nevertheless, one caseworker reported that she had no reason to doubt father's self-report that he was accessing services. Another caseworker further opined, and the court agreed, that because father was already involved in treatment services, it was not a good use of Department resources to investigate alternative service providers.

¶ 28    Father also contends that caseworker S.L. failed to contact him for roughly six months.[2]  Initially, we acknowledge the concerns about caseworker S.L.'s efforts during the case.  Most notably, S.L. could not recall portions of her interactions with the family, did not consistently follow the Department's notetaking procedures, and incorrectly asserted that the Department did not have the same reasonable efforts standards for out-of-state parents.  *See I.J.O.*, ¶¶ 15-16 (services for an out-of-state parent are included in the Department's obligation to provide reasonable services).  S.L. also agreed that there were likely months she went without contacting the family.

¶ 29    The juvenile court acknowledged that the Department could have taken additional steps or "done better" during the case, particularly during caseworker S.L.'s assignment.  Yet, the court credited S.L's testimony that when she attempted contact, the parents either failed to respond or actively avoided her.

---

[2] Caseworker I.V. was the original caseworker until the first termination.  S.L. was assigned after the remand and worked with the family for four months before I.V. resumed the role.

Considering the totality of the Department's efforts, the court concluded that reasonable efforts were made. *See A.M.*, ¶ 15.

¶ 30 True, the Department did not refer father to an in-home or life skills service provider. However, caseworker S.L. testified that the Department prioritized father's substance use treatment before making referrals for additional services like in-home or life skills support. *See My.K.M.*, ¶ 33 (a department has "discretion to prioritize certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan").

¶ 31 Father also asserts that the Department did not provide bus passes after his move, but the record contains no evidence of such requests. Even still, the Department supplied gas cards, and a Delaware caseworker reported that father could access free transportation services through Medicaid.

¶ 32 We are also unpersuaded by father's argument that the Department failed to make reasonable efforts by not providing in-person family time. The juvenile court found that once father moved out of state, the Department was not obligated to provide

in-person family time and determined it was not feasible on a regular basis given the lack of available funding and resources.

¶ 33 Caseworker S.L. inquired about funding for in-person family time, but reported the request was denied because the Department did not have confirmation that he was progressing in his treatment plan. She further noted that the Department's limited funding had to be divided among all families it served.

¶ 34 Lastly, we reject father's argument that the Department failed in its duty to provide reasonable efforts due to inconsistencies in virtual family time shortly before the second termination hearing. For much of the case, virtual family time was consistently provided.

¶ 35 True, in the months before the second termination hearing, the family's access to virtual family time was disrupted. The court found that these disruptions were due to circumstances beyond the caseworker's control, but caseworker I.V. "worked diligently to rectify the situation" and successfully reinstated and increased family time visits. Caseworker I.V. explained that though family time referrals were in place, difficulties connecting with the family time supervisor, changes in family time providers, and scheduling

barriers caused interruptions.  Thus, the inconsistencies were not the result of the Department's lack of efforts.

¶ 36     Accordingly, based on the foregoing, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate father and reunite him with the child.

### C.     Fit within a Reasonable Period of Time

¶ 37     Finally, father argues that even if he was unfit at the time of the termination hearing, the juvenile court erred by finding that he could not become fit within a reasonable time.  We discern no error.

### 1.     Applicable Law

¶ 38     "An unfit parent is one whose conduct or condition renders [the parent] unable or unwilling to give a child reasonable parental care."  *S.Z.S.*, ¶ 23.  At a minimum, reasonable parental care requires that a parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs.  *S.R.N.J.-S.*, ¶ 9.

¶ 39     A reasonable time is not an indefinite time but must be considered based on the physical, mental, and emotional conditions and needs of the child.  *S.Z.S.*, ¶ 25.  When determining whether a

parent may become fit within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *Id.* at ¶ 24. Partial or even substantial compliance with a treatment plan does not necessarily render a parent fit. *K.B.*, ¶ 26.

¶ 40    If a parent has made little to no progress on a treatment plan, the court is not required to allow the parent additional time for compliance. *See S.Z.S.*, ¶ 24. When, as here, a child is under six years old, the court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

2.    Analysis

¶ 41    The juvenile court determined that father's conduct and condition were unlikely to change within a reasonable time. The court acknowledged that father had made "some progress," but emphasized that nearly five years had elapsed since the child was removed from the home in an EPP case and "there continue[d] to be significant child protection concerns."

16

¶ 42      Father contends that he could become fit within a reasonable time by again asserting that he substantially complied with his treatment plan and the Department failed to provide reasonable efforts. But, as detailed above, the record does not support those arguments.

¶ 43      Still, father relies on testimony from Arapahoe County caseworker who believed father was sober at the time of the second termination hearing. But the juvenile court considered this testimony and found the caseworker lacked complete information regarding father's sobriety. *See A.M.*, ¶ 15.

¶ 44      Accordingly, in light of our conclusions above, the record supports the juvenile court's findings that father was unlikely to become fit within a reasonable time.

## IV. Mother's Argument

¶ 45      Mother asserts that the juvenile court erred by terminating her parental rights because the Department failed to make reasonable efforts and provide appropriate ADA accommodations.[3] We disagree.

---

[3] It is undisputed that the ADA applies to mother.

## A. Applicable Law

¶ 46 As discussed above, the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h). In evaluating whether the department made reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *S.N-V.*, 300 P.3d at 915. This evaluation involves "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan." *My.K.M.*, ¶ 33.

¶ 47 If a parent has a qualifying disability under the ADA, the juvenile court must also consider whether the department provided reasonable accommodations for that disability when assessing whether reasonable efforts were made. *See People in Interest of S.K.*, 2019 COA 36, ¶ 34; *see also* § 19-3-208(2)(g) (noting that services provided under section 19-3-208 must comply with the ADA). "[W]hat constitutes a reasonable accommodation will vary from case to case based on the child's health and safety needs, the

18

nature of the parent's disability, and the available resources." *S.K.*, ¶ 39.

### B. Analysis

¶ 48      Mother principally contends that the Department did not make reasonable efforts because it failed to consistently provide virtual family time and did not provide any in-person family time after the parents relocated to Delaware.

¶ 49      The juvenile court found that the Department made reasonable efforts and provided appropriate accommodations under the ADA. The court concluded that, once the family relocated, the Department was not obligated to provide in-person family time. It recognized that regular in-person visits were not feasible due to the Department's funding limitations and the substantial resources such arrangements would demand for a single family. And, as described above, the court further determined that "[w]hile family time was non-existent for nearly four months," caseworker I.V. "worked diligently to rectify that situation, which was largely out of her control." The record supports the court's findings.

¶ 50      As mother notes, caseworker I.V. acknowledged that in-person family time would have better enabled her to demonstrate parenting

skills and receive real-time parent coaching. However, the caseworker also opined that, after mother moved to Delaware, providing in-person family time was not reasonable given the Department's limited resources.

¶ 51 Mother further contends that the Department "failed to provide meaningful virtual visits" between her and the child. It is undisputed that virtual family time was inconsistently provided in the months leading up to the termination hearing. Caseworker I.V. acknowledged that the lack of virtual family time was a significant issue. Although she attempted to address the problem, persistent challenges — including difficulties connecting with the provider, miscommunications, the child's illnesses, scheduling conflicts, and a change in providers — ultimately resulted in a four-month gap with no virtual family time. Nevertheless, she sought to mitigate these barriers by reaching out to other resources around the county, arranging family time at the child's school, and personally supervising a family time visit. The record therefore demonstrates that the challenges with virtual family time arose primarily from factors beyond the Department's control, rather than from a lack of effort on its part.

¶ 52    To the extent mother contends she was not provided with appropriate accommodations for her disability, we decline to address this argument because it is insufficiently developed. On appeal, she does not identify any specific accommodations or services that should have been provided to better ensure the success of her treatment plan. *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development . . . .").

¶ 53    Accordingly, because the record supports the juvenile court's findings, we discern no basis for reversal.

## V.    Disposition

¶ 54    The judgment is affirmed.

JUDGE GROVE and JUDGE SCHOCK concur.

21